PEOPLE v DENNANY

PEOPLE v JONES

Docket Nos. 94225, 95271. Argued November 2, 1993 (Calendar Nos. 2-3). Decided June 21, 1994.

Nicholas Dennany was convicted by a jury in the Kalamazoo Circuit Court, Richard R. Lamb, J., of first-degree criminal sexual conduct involving his twelve-year-old daughter. The trial court denied his request to represent himself with the aid of standby counsel. The Court of Appeals, SHEPHERD, P.J., and D. E. HOLBROOK, JR., and CONNOR, JJ., in an unpublished opinion per curiam, remanded the case for a new trial to allow the defendant an opportunity to reassert his motion to proceed pro se (Docket No. 100969). The people appeal.

Emmett Jones was convicted by a jury in the Kalamazoo Circuit Court, William G. Schma, J., of unarmed robbery. Following a bench trial, he was convicted of being a third-felony offender. The defendant had been permitted to represent himself, and to consult with standby counsel. The Court of Appeals, MURPHY, P.J., and D. E. HOLBROOK, JR., and SAWYER, JJ., remanded the case in an unpublished opinion per curiam (Docket No. 110202). On remand, the circuit court reaffirmed the conviction. After remand, the Court of Appeals reversed the conviction in an unpublished opinion per curiam, finding that the trial judge had not adequately explained the pitfalls of self-representation or fully determined that the waiver of counsel was knowing, intelligent, and voluntarily made (Docket No. 110202). The people appeal.

In separate opinions, the Supreme Court *held:*

There is no absolute right to proceed to trial without counsel. The Michigan Court Rules require that, before a defendant is permitted to proceed pro se, the trial court must advise regard-

REFERENCES

Am Jur 2d, Criminal Law §§ 993-995, 997.

*Accused's right to represent himself in state criminal proceeding*—modern state cases. 98 ALR3d 13.

Existence and extent of right of litigant in civil case, or of criminal defendant, to represent himself before state appellate courts. 24 ALR4th 430.

ing the charge, the maximum possible prison sentence, any mandatory minimum sentence, and the risk involved in self-representation. The waiver must be reaffirmed at each subsequent proceeding. In addition, pursuant to *People v Anderson,* 398 Mich 361 (1976), at the time of the defendant's initial request to proceed pro se, the court must determine that the request is unequivocal; that the right has been asserted knowingly, intelligently, and voluntarily through a colloquy advising the defendant of the disadvantages of self-representation; and that self-representation will not disrupt, unduly inconvenience, or burden the court. Where there is error, but it is not one of complete omission of the requirements of MCR 6.005(D), (E) and *Anderson,* reversal is not required. Whether a particular departure justifies reversal will depend on the nature of the noncompliance. The presence of standby counsel is not an exception to the requirements of *Anderson* or the court rules and can never be deemed an unequivocal assertion of the defendant's rights; it will not legitimize a waiver-of-counsel inquiry that does not comport with legal standards.

In *Jones,* the failure of the trial court to advise the defendant of the dangers of self-representation requires remand for a new trial.

In *Dennany,* the erroneous conclusion of the trial court that the defendant's request to proceed pro se was not knowingly made requires remand for a new trial.

Justice GRIFFIN, joined by Justices BRICKLEY and MALLETT, stated:

The right to appear pro se is implicitly guaranteed in the Sixth Amendment of the United States Constitution, Const 1963, art 1, § 13, and by statute. However, there is no absolute right to standby, advisory counsel or hybrid representation under the Sixth Amendment or the Michigan Constitution. Whether such counsel will be permitted is within the sound discretion of the trial court. A defendant has a constitutional right to self-representation or to representation by counsel, but not both.

In *Jones,* the defendant was never advised of the dangers and disadvantages of self-representation, nor did the court conduct the detailed three-part inquiry required by *Anderson.* It also did not reaffirm the right to counsel at each subsequent proceeding as then required by MCR 6.101(C)(3). Thus, the defendant did not effectively relinquish his right to counsel, and the trial court erred in allowing the defendant to proceed pro se, requiring a new trial.

In *Dennany,* the trial court addressed the defendant's request

to proceed pro se within the analytical framework of *Anderson.* However, the Court of Appeals erred in holding that a defendant's request is unequivocal where standby counsel to assist with procedural matters merely is requested, although it correctly found that the trial court misunderstood the second requirement of *Anderson*—that a waiver must be knowing, intelligent, and voluntary, requiring a new trial.

Chief Justice CAVANAGH, joined by Justice LEVIN, concurring in part and dissenting in part, stated:

It is unnecessary to discuss whether the Michigan Constitution provides a right to standby counsel. The test articulated by the lead opinion that assertion of the right of self-representation be unequivocal, knowing, intelligent and voluntary, and that the defendant's self-representation must not disrupt, burden, or unduly inconvenience the administration of the court's business, coupled with the procedure outlined in MCR 6.005(D), (E), is all that is needed to decide these cases.

In *Dennany,* the record clearly shows that the defendant's assertion of the right to represent himself was unequivocal, knowing, intelligent, and voluntary. Therefore he was impermissibly denied his constitutional right of self-representation. In *Jones,* the defendant's motion to represent himself was granted with absolutely no inquiry regarding whether his assertion of the right was knowing and intelligent or whether he understood the dangers and disadvantages of that course of action. Thus, his conviction may be overturned on this basis alone. In sum, neither defendant asserted a right to standby or hybrid counsel at trial. Even if either had, it is unnecessary to decide whether Const 1963, art 1, § 13 provides such a right. Both cases may be decided on the basis of established Michigan law.

The lead opinion would create a trap for the unwary defendant in holding that a request to proceed pro se with standby counsel—be it to help either with procedural or trial issues—is an equivocal, and thereby ineffective, assertion of the defendant's constitutional right to self-representation as a matter of law. If the Supreme Court is going to make such combined requests equivocal as a matter of law, then it should also demand that a defendant be so informed before the request is made or allow a defendant to renew the request after the trap has been sprung. Michigan, as well as federal, law requires that a defendant proceeding pro se be alerted to the dangers and disadvantages of self-representation. The injustice of not doing so is compounded by the fact that common wisdom and actual experience indicate that standby counsel is almost invariably

appointed whenever a defendant chooses self-representation. It is fundamentally unfair to punish a defendant for requesting what all assume will be provided in the first place.

· Strict compliance with the court rules should be required. The court rules provide the minimum level of procedural protection that must be afforded every criminal defendant in Michigan when asserting the Michigan constitutional right of self-representation.

Justice BOYLE, joined by Justice RILEY, concurring in part and dissenting in part, stated:

A departure from the requirements of MCR 6.005(D) and (E) regarding waiver of counsel should not justify reversal of a conviction. Where the record establishes that a waiver of the right to counsel is knowing and voluntary, reversal is not justified.

A defendant validly asserts the right to proceed pro se when the record indicates a knowing and intelligent forgoing of the right to counsel and an ability and willingness to abide by rules of procedure and courtroom protocol. Whether a waiver is knowing and intelligent is to be assessed in a nonformal manner. The ultimate test is not a court's express advice, but rather the defendant's understanding.

Imposition of the requirement that the trial court obtain a new waiver at each stage of proceedings runs counter to the notion that self-representation is a right. A defendant who knowingly and intelligently exercises the right to self-representation has made a choice. Given that the likely consequence of such a choice will be to the defendant's disadvantage, a searching inquiry into the degree of understanding the alternatives and consequences is initially appropriate. Literal compliance with the formal waiver requirements of MCR 6.005(E) at each successive appearance before the same trial judge is redundant, and does not serve to further any obvious policy.

Applying the nonformal approach in *Jones,* the defendant made a knowing and intelligent waiver of his right to counsel and his conviction should be affirmed.

*Jones,* affirmed.

*Dennany,* affirmed in part, reversed in part, and remanded.

1. CRIMINAL LAW — RIGHT TO COUNSEL — WAIVER OF COUNSEL.
   There is no absolute right to proceed to trial of criminal charges without counsel.

2. CRIMINAL LAW — RIGHT TO COUNSEL — WAIVER OF COUNSEL.
   Before a defendant is permitted to proceed pro se, the trial court

must advise regarding the charge, the maximum possible prison sentence, any mandatory minimum sentence, and the risk involved in self-representation; the waiver must be reaffirmed at each subsequent proceeding; in addition, at the time of the defendant's initial request to proceed pro se, the court must determine that the request is unequivocal; that the right has been asserted knowingly, intelligently, and voluntarily through a colloquy advising the defendant of the disadvantages of self-representation; and that self-representation will not disrupt, unduly inconvenience, or burden the court; whether a particular departure justifies reversal will depend on the nature of the noncompliance (MCR 6.005[D], [E]).

3. Criminal Law — Right to Counsel — Standby Counsel — Waiver of Counsel.

The presence of standby counsel is not an exception to the requirements for waiver of counsel and can never be deemed an unequivocal assertion of the defendant's rights; it will not legitimize a waiver-of-counsel inquiry that does not comport with legal standards (MCR 6.005[D], [E]).

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *James J. Gregart,* Prosecuting Attorney, and *Michael H. Dzialowski,* Assistant Prosecuting Attorney, for the people.

Nicholas Dennany in propria persona.

State Appellate Defender (by *Richard B. Ginsberg*) for defendant Jones.

Griffin, J. We consolidated and granted leave to appeal in these two cases to consider the requisite judicial inquiry to be made before a criminal defendant who affirmatively seeks to proceed in propria persona[1] may be permitted to waive his correlative right to counsel and represent himself.

In *People v Jones,* we conclude that the trial court committed error requiring reversal by failing

---

[1] The terms "in propria persona" and "pro se" are used interchangeably throughout this opinion, both meaning self-representation.

to advise defendant of the dangers and disadvantages of self-representation, and, therefore, we affirm the decision of the Court of Appeals, which ordered a new trial.

In *People v Dennany,* a new trial is also required. Because the trial court essentially denied defendant his right to self-representation upon the erroneous ground that his decision to proceed pro se was not made knowingly and voluntarily, we affirm in part the Court of Appeals decision.

I

### A. STATEMENT OF FACTS—*PEOPLE v JONES*

Emmett Jones was charged with unarmed robbery,[2] and breaking and entering an occupied dwelling with intent to commit larceny.[3] He was also charged in a supplemental information with being an habitual offender. Defendant requested the assistance of counsel, and an attorney was appointed to represent him. Trial was scheduled for December 1, 1987. On November 8, 1987, defendant filed a motion to discharge his attorney and to proceed pro se. He alleged that appointed counsel had not visited him to discuss the case, had not responded to phone calls, had refused to release legal documents relating to the case, had waived circuit court arraignment without his knowledge or consent, and had denied him the right to participate actively in his own defense. Defendant represented that he was seeking to proceed pro se because he wanted the trial to start on its scheduled date, and substitute counsel would not have sufficient time to prepare.

At a hearing on November 23, 1987, the trial

---

[2] MCL 750.530; MSA 28.798.
[3] MCL 750.110; MSA 28.305.

court considered a motion by the prosecutor to use the defendant's prior convictions for impeachment purposes and the defendant's motion to proceed pro se. With regard to the prosecutor's motion, defendant indicated: "Okay, [appointed counsel] can handle this today and I will—would like the Court to grant me permission to take over the proceedings from there."

The trial court allowed appointed counsel to be heard concerning the request to proceed pro se. Counsel indicated that defendant wished to proceed as his own attorney and that he would stay on in an advisory capacity if requested to do so by the court. Defendant then stated:

> Yes, sir, if you would allow an attorney to assist me, I would, I mean ask to appear in pro per, but I do recognize my need for having certain motions Xeroxed as I am currently in the county jail, I don't have current facilities to Xerox and type motions. I will do the research, and I would need them served on the Court and it is hard for me to get in and get a docket number and get dates on cases and if an attorney would assist me, I would have no objection to that.

The assistant prosecutor stated that she took no position regarding the defendant's desire to represent himself, but pointed out that trial was scheduled for the next week. The trial court extended a motion deadline and told the defendant:

> [Appointed counsel] will cooperate in getting you those [court records]. He's got all the records. And as a part of your representing yourself, I will have [appointed counsel] also be present to assist you if you need him or want his assistance during the course of the trial. And also, [counsel], if you would assist him between now and then in the preparation of trial, including the motions.

The December trial date was adjourned at the prosecution's request so that another scheduled case could be tried. At a January hearing on defendant's motion for release on personal recognizance bond, defendant complained about the lack of assistance provided by appointed counsel, and stated that he still had not received materials the court had directed counsel to give him. Counsel failed to appear at this hearing until specifically summoned by the trial judge.

On March 22, 1988, a hearing was held on several pretrial motions. Defendant sought to delay the trial date, arguing that because he had been busy preparing to defend another case, he had not been able to devote adequate time to this matter. The presiding judge denied defendant's motion, noting during the course of argument that defendant should have relied more on his counsel, who was present in the courtroom and available to assist him. Defendant asked the court to order the official in charge of the jail to allow him to use the law facilities at the jail every day during trial because the jail staff had stated that he would only be allowed to use the law library on weekends. The judge advised defendant that he would have to rely on appointed counsel for any legal research or contact with witnesses.

A jury trial commenced on March 23, 1988. Defendant gave an opening statement, cross-examined two prosecution witnesses, and presented three defense witnesses. He also testified in his own behalf. Defendant presented a lengthy closing argument and objected during the prosecution's closing argument. Before the beginning of jury deliberations, appointed counsel moved on defendant's behalf, alternatively, for a mistrial, dismissal of the breaking and entering count, or to have the court decide the breaking and entering

charge on the basis of a statement made during trial. Following lengthy discussion, defendant waived a jury trial with regard to the breaking and entering count and the jury then deliberated only with regard to the unarmed robbery charge. The jury convicted defendant of unarmed robbery, but he was acquitted by the trial judge of breaking and entering. The bench trial on the supplemental information followed. Appointed counsel represented defendant during this proceeding. Defendant was convicted of being a third-felony offender. He was sentenced on May 16, 1988, to serve an enhanced prison term of from fifteen to thirty years.

Defendant filed a claim of appeal through appointed counsel. The Court of Appeals ultimately reversed defendant's conviction on the grounds that the trial judge did not adequately explain to the defendant the pitfalls of self-representation or fully determine that his waiver of counsel was knowingly, intelligently, and voluntarily made. However, the Court stated:

> In so concluding, we do not ignore, nor are we unsympathetic to, the arguments by the prosecutor. Those arguments point out that defendant was represented at the time of making his motion to be allowed to proceed in propria persona, that he conducted himself well when he was representing himself, and that his court-appointed attorney continued on as advisory counsel to assist defendant in preparing and presenting his defense. However, neither the court rule nor the case law recognizes this as an exception to the strict requirements imposed upon the trial court before allowing a defendant to proceed in propria persona. While we would urge the prosecutor to seek leave to appeal to the Supreme Court to have the Court reconsider whether such strict requirements are necessary where a defendant is represented at

the motion to be allowed to proceed in propria persona, or where there is standby counsel available throughout the proceedings, it is for the Supreme Court, and not this Court, to adopt such an exception.[4]

The prosecutor filed an application for leave to appeal with this Court. We granted the application and further ordered that this case be argued and submitted with *People v Dennany.* 442 Mich 936 (1993).

### B. STATEMENT OF FACTS—*PEOPLE v DENNANY*

Defendant Nicholas Dennany was convicted by a jury of first-degree criminal sexual conduct,[5] on the basis of an alleged sexual assault of his daughter when she was twelve years old. Defendant was sentenced to serve twenty-five to fifty years in prison.

The sole issue with which we are concerned in this appeal is defendant's request, denied by the trial court, to represent himself at the trial. The facts pertinent to defendant's efforts to proceed pro se are set forth in the Court of Appeals opinion:

Defendant first asked to represent himself through a June 19, 1986 motion for withdrawal of counsel. At the hearing on the motion, defendant's attorney told the court that defendant wanted to represent himself, but that he would like the assistance of an attorney for procedural matters. The attorney also told the court that his client's position was that he has been completely immersed in this matter through DSS proceedings and proceedings in juvenile court, and that defendant is representing himself against charges of abuse

---

[4] Unpublished opinion per curiam, decided October 29, 1992 (Docket No. 110202).

[5] MCL 750.520b(1)(a); MSA 28.788(2)(1)(a).

and neglect in juvenile court. Defendant told the court that he believed that there were issues of fact and law that would not be raised if not raised by him. He also told the court that he had successfully represented himself in a criminal prosecution involving the education of his children at home. When the court asked defendant if he was aware that he would have to follow the rules of evidence if he represented himself, defendant replied that he was so aware. The court also asked defendant if he recognized that there was a distinction between his juvenile court proceedings and the criminal case in that, while he might lose custody or parental rights in the former, he could lose his freedom in the latter. Defendant responded that he was aware of that. Defendant also told the court that the fact that he will not have the benefit of objective counsel was weighed in his decision to ask to represent himself.

The court denied defendant's request. It said that it was taking into account the fact that defendant was charged with a very serious offense, the current status of the case file, i.e., that the case had already been to pretrial, and that defendant's attorney had been representing defendant for some time and was familiar with the factual background of the case. The court found that, because defendant asked for assistance of counsel with procedural matters, his request was not unequivocal. The court also found that, although the request was voluntarily and intelligently made, it was not knowingly made because defendant thought some things in the voluminous juvenile court file were relevant and, thus, admissible, while, actually, they were not. Thus, concluded the court, defendant did not fully understand the consequences of his decision to represent himself. The court further found that defendant's acting as his own attorney would unduly inconvenience and burden the court's business and that it would not be in defendant's own best interests.

A week before trial began, defendant again asked to be allowed to represent himself. Defen-

dant again told the court that he had successfully represented himself in a case involving home education that involved complicated constitutional issues and that he was aware of the problems in self-representation. He stated that his relationship with his attorney was cordial but that he wished to represent himself because of disagreements over trial strategy. Apparently, defendant's attorney wanted to keep the case narrowed to the issue of whether defendant committed the particular act for which he was charged, but defendant wanted to bring in evidence about several other allegations of sexual abuse made by his children against him in an effort to show that all of the allegations had been coerced by his ex-wife and her new husband as part of a custody battle.

The court reversed its earlier finding that defendant's request for assistance with procedural matters made his request to represent himself equivocal, and it found that he was aware of the dangers involved ·in self-representation. Nonetheless, the court denied his request because it had grave concerns that defendant's desire to prove that the allegations were coerced by presenting evidence of other allegations would not result in a trustworthy determination of guilt or innocence due to the potent prejudicial effect of such evidence. The court went on to say that it was apparent that defendant would say things not properly before the trier of fact, that defendant's subjective involvement in the matter was very apparent, and that his subjective state of mind was such that he was not making his request with his eyes completely open.[6]

Following trial,[7] defendant appealed, arguing

---

[6] Unpublished per curiam opinion, decided June 11, 1992 (Docket No. 100969), slip op, pp 2-3.

[7] Before the commencement of trial, defendant filed an emergency application for leave to appeal with the Court of Appeals, alleging that the trial court had erred in denying his motion for self-representation. The Court denied his application in an order entered October 31, 1986.

that he should have been permitted to represent himself at trial. The Court of Appeals agreed and remanded the case to the trial court to allow defendant an opportunity to reassert his motion to proceed pro se.[8] In so doing, the Court of Appeals, applying the standards set forth in *People v Anderson,* 398 Mich 361; 247 NW2d 857 (1976) (see discussion, *infra*), held:

> First, the trial court was correct when it reversed its initial finding that defendant's request for help made his request for self-representation equivocal. . . . [T]he rule seems to be that a defendant's request for self-representation is equivocal where the defendant wants to have an attorney to perform some of the trial duties, but is unequivocal where he merely wants standby counsel to assist with procedural matters. . . .
>
> *       *       *
>
> We believe that the second requirement expressed in *Anderson, supra,* i.e., that a defendant's request to represent himself must be made knowingly, intelligently and voluntarily, was also satisfied in the present case. As noted above, the trial court found that the request was voluntarily and intelligently made, but that it was not knowingly made because defendant thought some evidence was admissible but it actually was not. We believe that the trial court incorrectly understood the "knowingly" requirement. . . . In *Anderson,* our Supreme Court stated that, although a defendant's competence is a pertinent consideration, competence does not refer to legal skills. . . . [T]he fact that defendant thought that some evidence was admissible when it actually was not does not mean that his request was not knowingly made, particularly because defendant specifically stated that he was aware that he would have to follow the rules

---

[8] Defendant raised numerous other issues not relevant to this appeal that the Court of Appeals did not address "for the reason tha such issues would be moot if a new trial is granted." Slip op, p 5.

of evidence if he represented himself and because
the trial court acknowledged that defendant was
aware of the dangers in self-representation. In any
event, skilled attorneys regularly attempt to have
inadmissible evidence admitted. They, like defen-
dant must, nevertheless, abide by the trial court's
ruling on the evidence.

\* \* \*

In the present case, defendant's expression of
why he wanted to represent himself was as sophis-
ticated and comprehensive as that of Overby. De-
fendant told the court that he believed that there
were issues of fact and law that would not be
raised if not raised by him. He also told the court
that he had successfully represented himself in a
criminal prosecution involving the education of his
children at home. Furthermore, he was represent-
ing himself in the abuse and neglect proceedings
connected with the allegations present in this
criminal case. Therefore, we believe that the trial
court was incorrect when it found that defendant's
request was not knowingly made.

Regarding the third requirement . . . .

\* \* \*

In light of the fact that the trial court did not
elucidate upon its finding that defendant's self-
representation would inconvenience and burden
the court, and in light of the fact that defendant
has experience in representing himself and has
agreed to abide by the rules of evidence, we con-
clude that there is nothing to indicate that the
court's business would be unduly inconvenienced
or burdened. [Slip op, pp 3-4.]

The Court of Appeals ordered a new trial,[9] and
the prosecution then filed an application in this

[9] The case was originally remanded with instructions that the
defendant was to receive a new trial only if he again validly waived
the right to counsel. If defendant were to insist on counsel, or failed
to make a valid waiver, his conviction was to be reinstated. Slip op, p
5. Defendant filed a motion for rehearing, which was granted by the
Court of Appeals. In an order entered November 13, 1992, the Court
issued an order that stated that a new trial was required regardless of

Court for leave to appeal, which was granted. 442 Mich 935 (1993).

## II

### A. THE RIGHT TO SELF-REPRESENTATION

In *Faretta v California,* 422 US 806; 95 S Ct 2525; 45 L Ed 2d 562 (1975), the United States Supreme Court held that the right of self-representation is implicitly guaranteed in the Sixth Amendment of the United States Constitution.[10] Under that amendment,

> It is the accused, not counsel, who must be "informed of the nature and cause of the accusation," who must be "confronted with the witnesses against him," and who must be accorded "compulsory process for obtaining witnesses in his favor." Although not stated in the Amendment in so many words, the right to self-representation—to make one's own defense personally—is thus necessarily implied by the structure of the Amendment. The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails.
>
> The counsel provision supplements this design. It speaks of the "assistance" of counsel, and an assistant, however expert, is still an assistant. The language and spirit of the Sixth Amendment contemplate that counsel, like the other defense tools guaranteed by the Amendment, shall be an aid to a willing defendant—not an organ of the State

whether defendant requests appointment of counsel or seeks again to represent himself in connection with that trial.

[10] The Sixth Amendment provides in pertinent part:

In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of Counsel for his defence.

interposed between an unwilling defendant and his right to defend himself personally. To thrust counsel upon the accused, against his considered wish, thus violates the logic of the Amendment. [*Id.* at 819-820. See also *McKaskle v Wiggins,* 465 US 168, 174; 104 S Ct 944; 79 L Ed 2d 122 (1984); *Rock v Arkansas,* 483 US 44; 107 S Ct 2704; 97 L Ed 2d 37 (1987); *Riggins v Nevada,* 504 US —; 112 S Ct 1810; 118 L Ed 2d 479 (1992). See, generally, anno: *Accused's right to represent himself in state criminal proceeding—modern state cases,* 98 ALR3d 13.]

The right of self-representation under Michigan law is secured by both constitution and statute. Const 1963, art 1, § 13, provides: "A suitor in any court of this state has the right to prosecute or defend his suit, either in his own proper person or by an attorney."

State statute reinforces that right:

On the trial of every indictment or other criminal accusation, the party accused shall be allowed to be heard by counsel and may defend himself, and he shall have a right to produce witnesses and proofs in his favor, and meet the witnesses who are produced against him face to face. [MCL 763.1; MSA 28.854.]

However, none of the above provisions, federal or state, guarantees an absolute right to proceed to trial without counsel. *Faretta, supra; People v Anderson, supra,* p 366.

### B. THE REQUISITE INQUIRY—FEDERAL CASES

The *Faretta* Court recognized that in exercising the right of self-representation, a defendant necessarily waives his correlative Sixth Amendment right to counsel. Consequently, a knowing and

intelligent waiver of the right to counsel was deemed by the Court to be an essential prerequisite to the right to proceed pro se:

> When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must "knowingly and intelligently" forgo those relinquished benefits. *Johnson v Zerbst,* 304 US [458] 464-465 [58 S Ct 1019; 82 L Ed 1461 (1938)]. Cf. *Von Moltke v Gillies,* 332 US 708, 723-724 [68 S Ct 316; 92 L Ed 309 (1948)] (plurality opinion of Black, J.). Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." *Adams v United States ex rel McCann,* 317 US [269] 279 [63 S Ct 236; 87 L Ed 268 (1942)]. [*Faretta, supra,* 422 US 835.]

In *Johnson v Zerbst, supra,* p 464, cited in *Faretta,* the Court first defined effective waiver, in the context of a defendant's right to counsel, as "an intentional relinquishment or abandonment of a known right or privilege." The *Johnson* Court held that courts must " 'indulge every reasonable presumption against waiver' " and that the effectiveness of waiver "should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record." *Id.,* pp 464-465.

In *Von Moltke v Gillies, supra,* pp 723-724,

which also cited *Faretta,* Justice Black, speaking for a plurality of the Court,[11] stated:

> [I]n light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.

The United States Supreme Court has not yet defined the necessary parameters of a *Faretta* inquiry. All the federal courts construe the United States Constitution to require a defendant to effectively waive his right to counsel before being granted the right to self-representation. The circuits are divided, however, on the extent of the judicial inquiry needed to confirm a valid waiver. See, generally, 2 LaFave & Israel, Criminal Procedure, §§ 11.3 and 11.5, pp 29-34 and 42-53.

The majority of federal courts, while acknowl-

---

[11] In *Von Moltke,* the defendant was convicted of violating the Espionage Act of 1917. Before trial, she signed a paper that purported to waive her right to counsel. The United States Supreme Court reversed her conviction, finding evidence that the defendant had been unduly pressured by the FBI into signing the waiver and that the defendant, who spoke German as her native language, may not have understood the words used in the written waiver.

edging *Von Moltke,* have taken a nonformalistic approach in ascertaining the right of self-representation. See *Hsu v United States,* 392 A2d 972, 983 (DC App, 1978). For instance, the United States Court of Appeals for the Ninth Circuit has stated that "[w]hile no particular form of interrogation is necessary, the court must assure itself that the defendant understands the charges and the manner in which an attorney can be of assistance." *United States v Gillings,* 568 F2d 1307, 1308-1309 (CA 9, 1978). See also *United States v Balough,* 820 F2d 1485 (CA 9, 1987); *United States v Aponte,* 591 F2d 1247, 1250 (CA 9, 1978). The United States Court of Appeals for the Tenth Circuit has stated that "the trial judge should conduct an inquiry sufficient to establish a defendant's knowledge and understanding of the factors" relevant to his decision to waive counsel, *United States v Padilla,* 819 F2d 952, 959 (CA 10, 1987). See also *Sanchez v Mondragon,* 858 F2d 1462, 1465 (CA 10, 1988); *United States v Gipson,* 693 F2d 109, 111 (CA 10, 1982), cert den 459 US 1216 (1983); *United States v Bennett,* 539 F2d 45, 50 (CA 10, 1976), cert den 429 US 925 (1976).

The United States Court of Appeals for the Third Circuit does not require a detailed listing of advice similar to that mandated for guilty plea proceedings conducted pursuant to Rule 11 of the Federal Rules of Criminal Procedure, but does require a "searching inquiry" sufficient to satisfy the trial judge that the defendant's waiver was understanding and voluntary. *United States v Welty,* 674 F2d 185, 189 (CA 3, 1982). See also *United States v Gallop,* 838 F2d 105, 109-110 (CA 4, 1988); *Wiesner v Abrams,* 726 F Supp 912, 917 (ED NY, 1989), aff'd without opinion, 909 F2d 1473 (CA 2, 1990).

Several courts have stated that a waiver hearing

expressly addressing the disadvantages of a pro se
defense is much preferred but not absolutely nec-
essary. See, e.g., *Fitzpatrick v Wainwright,* 800
F2d 1057, 1064 (CA 11, 1986); *United States v
Bailey,* 219 US App DC 67, 78, n 17; 675 F2d 1292
(1982), cert den 459 US 853 (1982); *Tuitt v Fair,*
822 F2d 166 (CA 1, 1987), cert den 484 US 945
(1987).

The United States Court of Appeals for the
Sixth Circuit now requires trial judges to follow
the model inquiry set forth in 1 Bench Book for
United States District Judges (3d ed), 1.02-2 to
1.02-5. See *United States v McDowell,* 814 F2d 245
(CA 6, 1987), cert den 484 US 980 (1987). Other
examples of a model inquiry format are set forth
in *People v Arguello,* 772 P2d 87 (Colo, 1989); and
*People v Lopez,* 71 Cal App 3d 568, 571-573; 138
Cal Rptr 36 (1977).

The common thread that can be gleaned from
these cases is that "[t]he ultimate test is not the
trial court's express advice, but rather the defen-
dant's understanding." *Fitzpatrick, supra,* p 1065.
See also *United States v Harris,* 683 F2d 322 (CA
9, 1982), appeal after remand 726 F2d 558 (CA 9,
1984). The most reliable assurance of an aware-
ness by the defendant of the dangers and dis-
advantages of self-representation is by means of a
colloquy on the record between the judge and the
defendant. *Bailey, supra,* p 74.

### C. THE REQUISITE INQUIRY—MICHIGAN LAW

In contemplation of these concerns, Michigan
has established stringent requirements before a
defendant may be allowed to proceed pro se.

In *People v Holcomb,* 395 Mich 326, 336-337; 235
NW2d 343 (1975), the Court acknowledged *Faretta*
and required trial judges henceforth to advise a

defendant who requests to proceed pro se of the " 'dangers · and disadvantages of self-representation' " and seek affirmatively to establish on the record that the defendant is " 'literate, competent and understanding' " of the choice that confronts him and " 'voluntarily exercising his informed free will' in declining to be represented by counsel and in seeking to represent himself."

Subsequently, in *People v Anderson, supra,* in the context of a defendant's eleventh hour request to dismiss his counsel and proceed pro se, this Court specified three requirements to be met before a defendant's request to dismiss his counsel and proceed in propria persona could be granted:

> First, the request must be unequivocal. . . .
>
> Second, once the defendant has unequivocally declared his desire to proceed pro se the trial court must determine whether defendant is asserting his right knowingly, intelligently and voluntarily. *Faretta, supra,* 422 US 835; *Holcomb, supra* at 337. The trial court must make the pro se defendant aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open. *Id.* Defendant's competence is a pertinent consideration in making this determination. *Westbrook v Arizona,* 384 US 150; 86 S Ct 1320; 16 L Ed 2d 429 (1966). But his competence does not refer to legal skills, "[f]or his technical legal knowledge, as such, was not relevant to an assessment of his knowing exercise of the right to defend himself." *Faretta, supra.*
>
> The third and final requirement is that the trial judge determine that the defendant's acting as his own counsel will not disrupt, unduly inconvenience and burden the court and the administration of the court's business. [*Anderson, supra,* pp 367-368.][12]

---

[12] Defendant Dennany urges this Court to recognize a distinction

In addition, the Michigan Court Rules provide direction concerning the timing and substance of the judicial inquiry to be made when a defendant affirmatively indicates that he wishes to proceed pro se. As is true of the present rule,[13] the former court rule, MCR 6.101(C)(3), which was in effect at

between pretrial requests to proceed pro se and mid-trial requests. Relying on language contained in the post-*Anderson* case *People v Wakeford,* 418 Mich 95; 341 NW2d 68 (1983), defendant maintains that pretrial requests to proceed pro se are absolute, whereas mid-trial requests are qualified by the *Anderson* requirements.

Although in *Wakeford, supra,* p 121, this Court, citing *Faretta,* summarily stated that the "defendant had an absolute right to represent himself," and, citing *Anderson,* further found that the defendant had voluntarily exercised that right, this sweeping statement must be regarded as dicta, for the following reasons. First, *Faretta* does not expressly establish self-representation as an absolute right. On the contrary, the imposition of specific waiver of counsel requirements in that case, which incidentally involved a timely pretrial request to proceed pro se, as an essential prerequisite to self-representation, contraindicates the alleged absolute nature of the right.

Second, in citing *Anderson,* the *Wakeford* Court did not address the express pronouncement in *Anderson* that neither the United States nor the Michigan Constitution guarantees an absolute right to proceed to trial without counsel. *Anderson, supra,* p 366. The *Anderson* Court specifically discussed cases involving both pretrial and mid-trial requests in reaching the conclusion that several requirements should be met before a defendant's request to proceed in proper person is granted. *Id.,* p 367. Moreover, the *Anderson* Court contemplated, but rejected, limiting the right to proceed pro se to only pretrial requests. *Id.,* p 368. In so doing, the Court clearly anticipated application of the qualified three-part test to both pretrial and mid-trial requests. Consequently, we reject defendant's contention that the right to proceed pro se is absolute if it is made before trial.

[13] MCR 6.005, effective since October 1, 1989, now provides in pertinent part:

(D) Appointment or Waiver of a Lawyer. If the court determines that the defendant is financially unable to retain a lawyer, it must promptly appoint a lawyer and promptly notify the lawyer of the appointment. The court may not permit the defendant to waive the right to be represented by a lawyer without first

(1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation, and

(2) offering the defendant the opportunity to consult with a

the time of the trials of these defendants, provided that waiver of the right to counsel must be reaffirmed at each subsequent proceeding.

While it is clear that once a defendant has affirmatively declared his desire to proceed pro se, the trial court must, on the record, advise the defendant of the dangers and disadvantages of self-representation, the application of this requirement has been inconsistent because, as one court has observed, "there are no exact guidelines regarding what warnings should be given to a defendant who wishes to proceed in propria persona." *People v Burden,* 141 Mich App 160, 163; 366 NW2d 23 (1985).

For instance, in *People v Kimber,* 133 Mich App 184; 348 NW2d 60 (1984), the defendant waived his right to counsel at arraignment, but was not asked to reaffirm that waiver at trial. The *Kimber* panel insisted upon strict compliance with the court rules and *Anderson, supra:*

> Merely informing the pro se defendant that he will be held to the same standards as an attorney who appears in court does not sufficiently focus on

retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer.

(E) Advice at Subsequent Proceedings. Even though a defendant has waived the assistance of a lawyer, the record of each subsequent proceeding (e.g., preliminary examination, arraignment, proceedings leading to possible revocation of youthful trainee status, hearings, trial or sentencing) must affirmatively show that the court advised the defendant of the right to a lawyer's assistance (at public expense if the defendant is indigent) and that the defendant waived that right. Before the court begins such proceedings,

(1) the defendant must reaffirm that a lawyer's assistance is not wanted; or

(2) if the defendant requests a lawyer and is financially unable to retain one, the court must appoint one; or

(3) if the defendant wants to retain a lawyer and has the financial ability to do so, the court must allow the defendant a reasonable opportunity to retain one.

the dangers and disadvantages of pro se represen-
tation. To satisfy the requirement of *Holcomb* and
*Anderson,* something of the special skills and
training necessary to effectively handle a criminal
defense must be conveyed to the defendant. Be-
cause of the noncompliance with GCR 1963,
785.4(3) and the failure to set forth the disadvan-
tages and dangers of pro se representation as
required by *Holcomb* and *Anderson,* we are unable
to conclude that defendant effectively relinquished
his fundamental right to counsel. [*Kimber, supra,*
p 189.]

Similarly, in *People v Blunt,* 189 Mich App 643;
473 NW2d 792 (1991), the defendant represented
himself at trial and then pleaded guilty to a
supplemental information. In permitting self-
representation, the trial court merely advised the
defendant that proceeding pro se was perilous, but
did not explain the risks that accompany it. The
record further indicated that the defendant's deci-
sion was hastily made in the middle of trial. The
appellate court concluded that "because of the
trial court's failure to set forth the disadvantages
and dangers of pro se representation as required
by court rule and case law, defendant did not
effectively relinquish his fundamental right to
counsel." *Id.,* p 650.

In contrast, in *People v Morton,* 175 Mich App
1; 437 NW2d 284 (1989), the defendant requested
and was allowed to appear in propria persona at
trial. The Court of Appeals held that the trial
court's statement to the defendant that represent-
ing himself was analogous to acting as his own
doctor and removing his own appendix was ade-
quate warning where the defendant's request was
knowledgeable and unequivocal:

We do not believe the court rule, MCR 6.101(C)(3),

is intended to be strictly applied, as suggested by the dissent, where a defendant chooses to discharge his attorney and to represent himself. . . .

If the constitution means anything in this regard, a defendant who knowingly exercises his right to defend himself need not be badgered and pressured at every turn to give up his right to defend himself. Should a trial judge appoint counsel for a defendant whether defendant wants counsel or not? We think not. We believe the trial judge should permit a defendant to exercise his constitutional right to defend himself, as was done here.

\* \* \*

We believe that the record in this case unmistakably shows that defendant understood exactly what he was doing and chose to represent himself while fully aware of his alternatives. To permit a defendant in a criminal case to indulge in the charade of insisting on a right to act as his own attorney and then on appeal to use the very permission to defend himself in pro per as a basis for reversal of a conviction and a grant of another trial is to make a mockery of the criminal justice system and the constitutional rights sought to be protected. We would not permit it. [*Morton, supra,* pp 7-9.]

Likewise, in *People v Mack,* 190 Mich App 7; 475 NW2d 830 (1991), the defendant was dissatisfied with his appointed attorney's performance. At a pretrial hearing, he orally moved for a finding of ineffective assistance of counsel. The trial court gave the defendant the option of representing himself or continuing with appointed counsel. The defendant decided to represent himself, but the court ordered appointed counsel to remain at the defense table throughout the proceedings. Without addressing the issue of compliance with the applicable court rules, the Court of Appeals concluded

that the trial court did not err in permitting the defendant to represent himself at trial:

> Here, before allowing defendant to proceed in pro per, the trial court alerted defendant to the serious nature of the charges and that a conviction would result in a possible life sentence. Second, the trial court was willing to declare a mistrial early in the proceedings in order to allow defendant to retain counsel; however, defendant vehemently opposed that option, choosing instead to proceed on his own. Third, defendant had access to his appointed counsel throughout the proceedings and, in fact, deferred to. appointed counsel on many occasions. Finally, at one point during the trial, the court instructed defendant on proper courtroom decorum and explained to defendant that he could not proceed in. pro per if he engaged in disruptive behavior.
>
> In sum, we conclude that it is "inconceivable that defendant did not know what he was doing." [*Id.,* p 16.]

The appeals now before us afford an opportunity to provide guidance by summarizing the warnings and inquiry required under *Anderson* and the court rules. The underpinnings for these requirements are based not only in the protection of a defendant's fundamental constitutional rights, *Faretta* and *Anderson, supra,* but on practical considerations as well:

> "Whether the prospective pro per is a naïve character who sincerely believes he can represent himself better than can a lawyer, a cagey loser who is going to try to reduce the trial to a shambles in the hope that somehow reversible error will creep in, a free soul with a touch of ham, or simply someone who wants to have some fun with the judicial establishment, the trial judge must recognize that the first ground on appeal is proba-

bly going to be that the defendant was allowed to represent himself without having intelligently and voluntarily made that decision. Such are the facts of life. Therefore, pragmatically, and defensively, in addition to the legal necessity of establishing that a defendant voluntarily and intelligently reached this decision, the trial court should also protect itself—and the record." [*Blunt, supra,* p 649, quoting from *People v Lopez, supra,* pp 571-572. See also *Morton, supra,* pp 8-9.][14]

Obviously, the most effective way for a trial court to safeguard against the opening of an appellate parachute is to comply with the court rules and *Anderson.*

The applicable court rules, MCR 6.005(D) and (E), are very specific. First, the court may not permit the defendant to waive the right to be represented by a lawyer without advising the defendant of (a) the charge, (b) the maximum possible prison sentence for the offense, (c) any mandatory minimum sentence required by law, and (d) the risk involved in self-representation.

Second, a defendant who wishes to proceed pro se must be offered the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer.

Third, even though a defendant has waived the assistance of a lawyer, the waiver must be reaffirmed at each subsequent proceeding.

---

[14] As the *Faretta* Court held:

The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law. Thus, whatever else may or may not be open to him on appeal, a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of "effective assistance of counsel." [*Id.,* p 835, n 46.]

In addition, pursuant to *Anderson, supra,* the court must, upon a defendant's initial request to proceed pro se, determine three things: (1) that the request is unequivocal; (2) that the right has been asserted knowingly, intelligently, and voluntarily through a colloquy advising the defendant of the disadvantages of self-representation; and (3) that self-representation will not disrupt, unduly inconvenience, or burden the court.

Where there is error but it is not one of complete omission of the court rule and *Anderson* requirements, reversal is not necessarily required. Cf. *Guilty Plea Cases,* 395 Mich 96, 122-124; 235 NW2d 132 (1975). Whether a particular departure justifies reversal "will depend on the nature of the noncompliance." *Id.,* p 113.

In light of its relationship to the *Anderson* requirements, and because of its significance in the *Dennany* case, we turn now to consideration of the claimed "right" to standby counsel.

## III

### THE "RIGHT" TO STANDBY COUNSEL

In *Faretta, supra,* the United States Supreme Court suggested:

> [A] State may—even over objection by the accused—appoint a "standby counsel" to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary. [*Id.,* p 835, n 46.][15]

In its subsequent decision in *McKaskle v Wig-*

[15] " 'Standby' counsel" has been defined as a situation in which a pro se defendant is given the assistance of advisory counsel who may take over the defense if for some reason the defendant becomes unable to continue. *Locks v Sumner,* 703 F2d 403, 407, n 3 (CA 9, 1983).

*gins, supra,*[16] the court made explicit what was already implicit in *Faretta:*

> A defendant's Sixth Amendment rights are not violated when a trial judge appoints standby counsel—even over the defendant's objection—to relieve the judge of the need to explain and enforce basic rules of courtroom protocol or to assist the defendant in overcoming routine obstacles that stand in the way of the defendant's achievement of his own clearly indicated goals. Participation by counsel to steer a defendant through the basic procedures of trial is permissible even in the unlikely event that it somewhat undermines the pro se defendant's appearance of control over his own defense. [*McKaskle, supra,* p 184.]

The *McKaskle* Court also spoke about the distinct but related issue of "hybrid" representation:[17]

> *Faretta* does not require a trial judge to permit "hybrid" representation of the type Wiggins was actually allowed. But if a defendant is given the opportunity and elects to have counsel appear before the court or jury, his complaints concerning counsel's subsequent unsolicited participation lose much of their force. A defendant does not have a constitutional right to choreograph special appearances by counsel. Once a pro se defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be with the defendant's acquiescence, at least until the defendant expressly and unam-

---

[16] In *McKaskle,* the Court addressed what role standby counsel, who has been appointed by the trial court over the defendant's objections, may play at trial consistent with the protection of the defendant's *Faretta* rights.

[17] "Hybrid representation" describes an arrangement whereby both the defendant and his attorney would conduct portions of his trial and share joint presentation of his defense, while the defendant retains ultimate control over defense strategy. *State v Gethers,* 197 Conn 369, 383; 497 A2d 408 (1985).

biguously renews his request that standby counsel be silenced. [*Id.*, p 183.]

While the United States Supreme Court has recognized the efficacy of advisory counsel in assisting a pro se defendant, that Court has not directly addressed the constitutional dimensions of the right to standby or hybrid counsel. However, the federal courts have uniformly held that neither the right to standby counsel nor hybrid representation are absolute under the Sixth Amendment, but rather are within the sound discretion of the trial judge.[18]

Several state courts have held that while their state constitutions guarantee a right to self-representation, there is no constitutionally mandated right to standby or hybrid counsel.[19]

Some courts have expressed the view that the appointment of standby counsel, while not mandatory, is the preferred and prudent course to take when a defendant elects to proceed pro se. See

[18] See, e.g., *United States v Betancourt-Arretuche,* 933 F2d 89 (CA 1, 1991), cert den 502 US 959; 112 S Ct 421; 116 L Ed 2d 441 (1991); *United States v Mosely,* 810 F2d 93, 97 (CA 6, 1987), cert den 484 US 841 (1987); *Julius v Johnson,* 755 F2d 1403 (CA 11, 1985) (modified 854 F2d 400 [1988]), cert den 488 US 960 (1988); *United States v Weisz,* 231 US App DC 1; 718 F2d 413 (1983), cert den 465 US 1027 (1984); *United States v Tarantino,* 269 US App DC 398, 434; 846 F2d 1384 (1988), cert den 488 US 867 (1988); *Locks v Sumner,* n 15 *supra; United States v Kimmel,* 672 F2d 720 (CA 9, 1982); *United States v Halbert,* 640 F2d 1000 (CA 9, 1981); *United States v Gigax,* 605 F2d 507, 516-517 (CA 10, 1979); *United States v Dunlap,* 577 F2d 867 (CA 4, 1978), cert den 439 US 858 (1978); *United States v Hill,* 526 F2d 1019 (CA 10, 1975), cert den 425 US 940 (1976); *United States v Klee,* 494 F2d 394, 396-397 (CA 9, 1974), cert den 419 US 835 (1974); *United States v Gaines,* 416 F Supp 1047, 1050-1051 (ND Ind, 1976); *United States v Swinton,* 400 F Supp 805 (SD NY, 1975).

[19] See, e.g., *Scarbrough v State,* 777 SW2d 83, 92 (Tex Crim App, 1989); *Parren v State,* 309 Md 260; 523 A2d 597 (1987); *People v Arguello, supra; State v Gethers,* n 17 *supra* (and cases cited therein); *People v Mirenda,* 57 NY2d 261; 442 NE2d 49 (1982); *Hooks v State,* 416 A2d 189 (Del, 1980); *State v Russell,* 270 Ind 55; 383 NE2d 309 (1978); *State v Burgin,* 539 SW2d 652 (Mo, 1976).

*Sanchez v Mondragon* and *United States v Padilla, supra.*[20]

Although the Michigan Constitution, art 1, § 13 provides that "[a] suitor in any court in this state has the right to prosecute or defend his suit, either in his own proper person *or* by an attorney" (emphasis added), we do not find in this language an absolute entitlement to standby counsel.

The primary rule of construction in ascertaining the meaning of words in a constitution is the rule of "common understanding." A court should give effect to plain meaning of such words as understood by the people who adopted it. *Advisory Opinion on Constitutionality of 1978 PA 426,* 403 Mich 631, 638; 272 NW2d 495 (1978). Use of the disjunctive "or" in art 1, § 13 contradicts any suggestion that a defendant has a right to appear pro se *and* simultaneously be accorded the assistance of advisory counsel. The word "or," under these circumstances, serves to "disjunctively co-ordinate the two propositions [so] that each in turn excludes the other . . . ." *American Fidelity Co v R L Ginsburg Sons' Co,* 187 Mich 264, 276; 153 NW 709 (1915). In other words, a defendant has a constitutional entitlement to represent himself or to be represented by counsel—but not both.[21]

---

[20] In *United States v Welty, supra,* p 193, n 5, the Third Circuit cited with approval Standard 6-3.7 of 1 ABA Standards for Criminal Justice (2d ed), Special Functions of the Trial Judge, pp 6-41 to 6-42, which provides:

When a defendant has been permitted to proceed without the assistance of counsel, the trial judge should consider the appointment of standby counsel to assist the defendant when called upon and to call the judge's attention to matters favorable to the accused upon which the judge should rule on his or her motion. Standby counsel should always be appointed in cases expected to be long or complicated or in which there are multiple defendants.

[21] Earlier decisions of the Court of Appeals have, without extended

Such an interpretation is consistent with the underlying purpose of standby counsel, which has relatively recent origins as a tool of trial management for the courts to use in aiding a defendant who chooses the perilous path of self-representation. We conclude that art 1, § 13 permits the use of standby counsel as a matter of grace, but not as a matter of right.[22]

Having concluded that the right to standby counsel is a matter of discretion for the trial court, a question remains how a request for, or the presence of, standby counsel affects the validity of waiver of counsel. In one of the cases now before us, *People v Dennany,* the Court of Appeals formulated the following conclusion:

> Based on *Faretta, supra,* and the cases from this Court . . . the rule seems to be that a defendant's request for self-representation is equivocal where the defendant wants to have an attorney to perform some of the trial duties, but is unequivocal where he merely wants standby counsel to assist with procedural matters. Therefore, the trial court in the present case correctly determined that defendant's request unequivocal. [*Dennany, supra,* slip op, p 3.]

The procedural/substantive distinction drawn by the Court of Appeals finds little support in either case authority or practical considerations. We note

discussion, reached a similar conclusion. See *People v Gravitt,* 113 Mich App 482, 484-485; 317 NW2d 330 (1982); *People v Seaton,* 106 Mich App 234; 307 NW2d 454 (1981); *People v William Ramsey,* 89 Mich App 260, 264; 280 NW2d 840 (1979).

[22] To extract a greater right from the language of the Michigan statute, which provides that "a party accused shall be allowed to be heard by counsel and may defend himself," MCL 763.1; MSA 28.854, would likewise be inconsistent with the history and origins of standby counsel. We find no record that the Legislature ever intended that the statute should provide a guarantee of either standby or hybrid representation.

initially that the requirement that a waiver of counsel be "unequivocal" serves two purposes:

> First, it acts as a backstop for the defendant's right to counsel, by ensuring that the defendant does not inadvertently waive that right through occasional musings on the benefits of self-representation . . . [b]ecause a defendant normally gives up more than he gains when he elects self-representation, we must be reasonably certain that he in fact wishes to represent himself. . . .
>
> The requirement that a request for self-representation be unequivocal also serves an institutional purpose: It prevents a defendant from taking advantage of the mutual exclusivity of the rights to counsel and self-representation. A defendant who vacillates at trial between wishing to be represented by counsel and wishing to represent himself could place the trial court in a difficult position: If the court appoints counsel, the defendant could, on appeal, rely on his intermittent requests for self-representation in arguing that he had been denied the right to represent himself; if the court permits self-representation, the defendant could claim that he had been denied the right to counsel. . . . The requirement of unequivocality resolves this dilemma by forcing the defendant to make an explicit choice. If he equivocates, he is presumed to have requested the assistance of counsel. [*Adams v Carroll*, 875 F2d 1441, 1444 (CA 9, 1989).]

The right to proceed pro se and the right to counsel have been described as " 'two faces of the same coin,' " because the waiver of one right constitutes the assertion of the other; consequently, "for purposes of determining whether there has been a deprivation of constitutional rights a criminal defendant cannot logically waive or assert both rights." *United States v Conder,* 423 F2d 904, 908 (CA 6, 1970), cert den 400 US 958 (1970). Many

courts have therefore concluded that a pro se defendant's conditional request to proceed with assistance of counsel, either in the form of hybrid representation or standby counsel, is an equivocal and therefore unacceptable waiver. See *United States v Oakey,* 853 F2d 551, 552-554 (CA 7, 1988), cert den 488 US 1033 (1989); *Tuitt v Fair, supra,* p 174 ("[w]hen a defendant refuses to waive his right to counsel, while demanding to proceed pro se, the trial court will find it hard to know which constitutional right is being asserted"); *United States v Gaines,* 416 F Supp 1047 (ND Ind, 1976); *State v Gethers,* 197 Conn 369; 497 A2d 408 (1985); *State v Russell,* 270 Ind 55; 383 NE2d 309 (1978); *Nagy v State,* 270 Ind 384; 386 NE2d 654 (1979).

In *Maynard v Meachum,* 545 F2d 273 (CA 1, 1976), the court addressed an appeal alleging ineffective waiver of counsel where the defendant had the assistance of standby counsel during his trial. The court concluded that the defendant was entitled to a new trial because, despite the presence of standby counsel, the trial court had not fulfilled its affirmative obligation to ask such questions and receive such satisfactory answers to enable it to conclude that a valid waiver had been effected. The *Maynard* court stated:

> Whatever label is attached to it, the net result was that Maynard had less than the full representation by counsel to which, absent a valid waiver, he was entitled under the Sixth Amendment. . . . *We can conceive of no reason why the standard for waiving part of a constitutional right should be different from the standard for waiver of the entire right.* Respondent argues, and we agree, that it is within the discretion of the trial court to allow the sort of hybrid arrangement that was adopted in this case . . . [b]ut it does not follow that such an arrangement is the equivalent of full

representation by counsel for purposes of waiver. . . . On respondent's analysis, the right to counsel is satisfied, regardless of the reality of self-representation, so long as counsel is not formally allowed to withdraw and remains in the courtroom. We do not believe that the protections of this right that have evolved from *Johnson v Zerbst,* 304 US 458; 58 S Ct 1019; 82 L Ed 1461 (1938), can be so casually swept away.

Thus, although the record reveals that Maynard knew of his right to appointed counsel, and that he affirmatively acquiesced in the procedure at trial . . . the question remains whether this acquiescence was competent, intelligent and voluntary. See *Johnson v Zerbst, supra,* 304 US 465 . . . *Moore v Michigan,* 355 US 155, 164; 78 S Ct 191; 2 L Ed 2d 167 (1957). [*Id.,* p 277. Emphasis added.]

We agree with *Maynard* that the presence of standby counsel does not legitimize a waiver-of-counsel inquiry that does not comport with legal standards. We therefore do not recognize the presence of standby counsel as an exception to the *Anderson* or court rule requirements.

Moreover, we reject the dichotomy drawn by the Court of Appeals in *Dennany* between requests for attorney assistance with trial duties and assistance with procedural matters. Because there is no substantive right to standby counsel, the trial court is under no obligation to grant such a request. Consequently, a request to proceed pro se with standby counsel—be it to help with either procedural or trial issues—can never be deemed to be an unequivocal assertion of the defendant's rights.

Further, the distinction drawn by the Court of Appeals would create a new subclassification of co-counsel which has never before been accepted by the courts. While current case law recognizes "hy-

brid" and "standby" counsel, no authority has
further divided these categories into task-oriented
groups for purposes of determining the validity of
a waiver.[23] It is a distinction without basis in law,[24]
and, as a practical matter, it unduly binds the
trial court's discretion, creating the appellate para-
chute that we would close with the imposition of
the stringent requirements set forth in this deci-
sion.

IV

We now apply these principles to the facts of the
two cases at hand.

A

In *People v Jones,* the trial judge never advised
defendant of the dangers and disadvantages of self-
representation as contemplated by *Faretta* and
*Holcomb,* nor did he conduct the detailed three-
part inquiry expressly required by *Anderson.* We
note also that the trial court did not reaffirm the
right to counsel at each subsequent proceeding as

[23] In *McKaskle, supra,* the Court viewed the help an attorney gives
a pro se defendant in these terms—but it was for the narrow purpose
of deciding whether standby counsel's interference with the defen-
dant's *Faretta* rights violated the Sixth Amendment.

[24] An underlying fault of the *Dennany* Court's approach is its
misinterpretation of Michigan precedent. The Court cites *People v
Heard,* 178 Mich App 692; 444 NW2d 542 (1989), and *People v
Burden, supra,* as proof that "the assistance of counsel in an advisory
capacity [does] not render the defendant's request to represent him-
self equivocal." Slip op, p 3. However, those cases make no express
reference to the defendant requesting advisory counsel; advisory
counsel was simply appointed by the court after the defendant moved
to proceed pro se. *People v Ramsey, People v Seaton,* and *People v
Gravitt,* n 21 *supra,* all stand for the proposition that a defendant
"cannot have it both ways" and must clearly state he is willing to go
it alone. Thus, the Court of Appeals determination that "while
*Gravitt, supra,* seems to indicate that a request for advisory counsel
may make a defendant's request to represent himself equivocal, it is
against the great weight of authority" is simply incorrect. *Id.*

required by the then-existing court rule, MCR
6.101(C)(3).[25]

Under these circumstances, we conclude that
the trial court erred in allowing defendant to
proceed in propria persona and that reversal is
required. We agree with the Court of Appeals that
defendant did not effectively relinquish his funda-
mental right to counsel.[26] The decision of the Court
of Appeals therefore should be affirmed.

B

In *People v Dennany,* the trial court did address
defendant's request to proceed pro se within the
analytical framework of *Anderson.* However, we
find that the Court of Appeals erred by holding
that a defendant's request "is unequivocal where

[25] MCR 6.005(D) and (E), as adopted effective October 1, 1989, had
not yet been promulgated at the time of the trial of either defendant
in these cases.

[26] Justice BOYLE, in her concurring opinion, would hold that defen-
dant Jones made a knowing and intelligent waiver of his right to
counsel, on the basis of his "history of personal involvement with the
criminal justice system" and the consequent characterization of him
as a sophisticated defendant. *Post,* p 467. At best, defendant's record
of six prior felonies and four misdemeanors demonstrates his familiar-
ity with the court system; it does not necessarily follow, however, that
defendant appreciates the value of counsel or, conversely, the disad-
vantages of self-representation, in the absence of any evidence of his
past experiences with the courts and counsel. It should not be forgot-
ten that defendant Jones' main reason for proceeding pro se was his
unhappiness with his attorney and his desire to proceed as scheduled
in his case; he was not undertaking self-representation because he
was familiar with the workings of the courts.

Moreover, the fact that defendant Jones was represented by counsel
during the motion to proceed pro se, and by standby counsel through-
out trial and sentencing, should not, contrary to Justice BOYLE's
assertion (*post,* p 466), weigh in favor of a finding that defendant's
decision was knowing, voluntary, and intelligent. As we have noted
above, p 447, the presence of standby counsel does not legitimize a
waiver-of-counsel inquiry that does not comport with legal standards.

Finally, the important issue whether waiver of the right to counsel
is subject to a harmless error analysis, raised sua sponte by the
concurrence, is a question that should be addressed, if at all, after the
parties have been afforded an opportunity to brief and argue this
jurisprudentially significant issue.

he merely wants standby counsel to assist with procedural matters." Slip op, p 3.

We agree with the Court of Appeals that the trial court misunderstood the second *Anderson* requirement—that a waiver be made "knowingly, intelligently and voluntarily." The trial court found that defendant's request was not "knowingly" made because defendant thought some evidence, i.e., allegations concerning alleged improprieties with other family members, would be admissible when, under the rules, it would not be allowed as evidence. *Anderson* contradicts such an interpretation, noting that although a defendant's competence is a pertinent consideration, competence does not translate into legal skills:

> "[For] his technical legal knowledge, as such, was not relevant to an assessment of his knowing exercise of the right to defend himself." [*Anderson, supra,* p 368, quoting *Faretta, supra.*]

Accordingly, in *Dennany,* we would reverse in part, affirm in part, and remand for a new trial.

BRICKLEY and MALLETT, JJ., concurred with GRIFFIN, J.

CAVANAGH, C.J. (*concurring in part and dissenting in part*). I concur with much of the lead opinion. I agree that the trial court erred in *Jones* by failing to advise the defendant of the dangers of self-representation as expressly required by *People v Anderson,* 398 Mich 361; 247 NW2d 857 (1976), and the unambiguous language of MCR 6.101(C)(3).[1] I also agree that the trial court erred in *Dennany* by erroneously concluding that Dennanny's waiver was not knowingly made. Accordingly, both defendants must have new trials.

[1] Presently MCR 6.005(E).

I write separately, however, for three reasons: (1) to express my disagreement with the unnecessary interpretation of our constitution in part III of the lead opinion, (2) to point out the trap that the lead opinion creates for an unwary defendant, and (3) to voice my belief that strict compliance with the court rules will do more to reduce appeals than requiring anything less.

I

It is a well-established rule of construction that this Court will avoid interpreting our constitution when a case can be decided on an alternate basis. *Lisee v Secretary of State,* 388 Mich 32, 40; 199 NW2d 188 (1972). I cannot endorse part III of the lead opinion that interprets Const 1963, art 1, § 13, because that interpretation is unnecessary to decide these cases.

As the lead opinion correctly observes, established Michigan law requires that an assertion of the right of self-representation must be: (1) unequivocal; (2) knowing, intelligent, and voluntary; and, finally, (3) a defendant's self-representation must not disrupt, burden, or unduly inconvenience the administration of the court's business. *Ante* at 432. This test, coupled with the procedure outlined in the court rules, is all that this Court needs to decide these cases. Therefore, it is unnecessary to discuss whether the Michigan Constitution provides a "right" to standby counsel.

It is true that defendant Dennany urges this Court to establish that right. It is interesting to note, however, that he never asserted a right to standby counsel at trial. At trial, Dennany made the following request:

In reference to my request to have Mr. Mequio

[defendant's court-appointed attorney], another person available to advise me in this procedure, *what's intended isn't a conditional request at all, but rather had to do with an expediency,* if you will. . . .

*That doesn't have anything to do with my reluctance or lack of reluctance to represent myself, it's absolutely essential, I say that unequivocally, it's absolutely essential that I represent myself.* But it is a convenience as it were, as much for the Court as for myself if there's counsel available . . . . [Emphasis added.]

Thus, Dennany never asserted a "right" to have standby counsel. He merely observed that such counsel would be a benefit both to himself and the court in facilitating the trial. And with good reason, Dennany apparently realized that if he demanded standby counsel his assertion would be deemed "equivocal" and thus ineffective. The trial court recognized as much:

Mr. Dennany is saying it's [his assertion of the right to represent himself] unequivocal, he wants to represent himself and he wants counsel here as a convenience. And then he uses his words very carefully, and *it is not merely a difference in words without a substantive distinction.* I think I take what Mr. Dennany is saying to me to be this:

"I unequivocally wish to represent myself. I recognize that I'm not a lawyer, I'm not familiar with courtroom proceeding[s] and perhaps the rules that everyone abides by, but I still feel that I can deliver the services I think are necessary in this case most effectively by myself. And if Mr. Mequio was here to help me overcome any road blocks to delivering my message, that would be helpful."

So the—it's clear to me that he's stating unequivocally within the meaning of that word in the context of an assertion of the right to represent one's self that he's saying in no uncertain

terms "I want to represent myself." [Emphasis
added.]

The trial court did not deny defendant's motion
because his waiver was unequivocal. It denied it
because it believed that the waiver was not know-
ingly made. The trial court remarked:

> My ultimate conclusion on this is while you
> have made your statement unequivocally and
> you're aware of some of the dangers and disadvan-
> tages of self-representation, your involvement with
> this case and your subjective state is such that
> you're not doing it with your eyes completely
> opened . . . .

The trial transcript of Dennany's motion to
represent himself clearly shows that it was know-
ingly made. The test for a knowing assertion of the
right to represent oneself was established in *An-
derson:*

> [T]he existence of a knowing and intelligent
> waiver must depend in each case upon the particu-
> lar facts and circumstances surrounding that case,
> including the background, experience and conduct
> of the accused. [*Id.* at 370.]

Applying this test to Dennany leads to the con-
clusion that his request was knowingly made. As
the trial court observed, Dennany's request was so
sophisticated that he carefully limited it so as not
to make it "equivocal." This level of sophistication,
and the comprehensive nature of the request as
reflected by the record, belies any conclusion other
than a knowing and intelligent assertion of his
constitutional right of self-representation.

Furthermore, Dennany's request was voluntary.
He was fully advised of the dangers and disadvan-

tages of representing himself. Dennany's de-
meanor, conduct, and early[2] assertion of his right
to represent himself obviated any claim that
granting his motion would unduly inconvenience,
disrupt, or burden the court.

I would affirm the decision of the Court of
Appeals solely on the basis of *Anderson* and its
constitutional requirements. The record in this
case clearly shows that Dennany's assertion of his
right to represent himself was unequivocal, know-
ing, intelligent, and voluntary. Therefore, Den-
nany was impermissibly denied his constitutional
right of self-representation.

Similarly, defendant Jones' appeal may be re-
solved on the basis that the trial court utterly
failed to follow *Anderson.* Speaking on his own
behalf, Jones said:

> [I]f you would allow an attorney to assist me, I
> would, I mean ask to appear in pro per, but I do
> recognize my need for having certain motions
> Xeroxed as I am currently in the county jail, I
> don't have current facilities to Xerox and type
> motions. I will do the research, and I would need
> them served on the Court and it is hard for me to
> get in and get a docket number and get dates on
> cases and if an attorney would assist me, I would
> have no objection to that.

Defendant's motion was granted with absolutely
no inquiry regarding whether defendant's asser-
tion of his right to represent himself was knowing
and intelligent or whether he understood the dan-
gers and disadvantages of that course of action.
This is a clear *Anderson* violation. Defendant

---

[2] I agree with the lead opinion that pretrial requests to proceed pro
se are not absolute. The *Anderson* requirements must be satisfied in
all cases. However, pretrial requests significantly diminish the chance
that a defendant's request will "unduly inconvenience" or "burden"
administration of the court's business.

Jones' conviction may, therefore, be overturned on this basis alone.

In sum, neither defendant asserted a "right" to standby or hybrid counsel at trial. Even if either had, it is still unnecessary for this Court to decide whether art 1, § 13 provides for such a right. Both cases may be decided on the basis of established Michigan law, and neither calls for a new analysis of art 1, § 13. Accordingly, I respectfully dissent from part III of the lead opinion.[3]

II

The lead opinion creates a trap for the unwary defendant by holding that a request to proceed pro se with standby counsel—be it to help either with procedural or trial issues—is an equivocal, and thereby ineffective, assertion of the defendant's constitutional right to represent himself as a matter of law.

The trap is demonstrated by contrasting what happened to Dennany and Jones. Dennany realized that if he demanded standby counsel his waiver would be deemed "equivocal." Therefore, Dennany went out of his way to point out that this was not what he intended. It is clear that Dennany would have preferred to have assistance from counsel. It is equally clear, however, that had Dennany been given a choice of going it alone and waiving all right to counsel, standby or otherwise, he would have happily done so.

Unfortunately, Jones did not possess the same level of sophistication. At the same time that he asserted his right to represent himself, he also

---

[3] I do, however, endorse that portion of part III in which the lead opinion would hold that "the presence of standby counsel does not legitimize a waiver-of-counsel inquiry that does not comport with legal standards." *Ante* at 446.

asked that standby counsel be available to assist
him. Thus, unknowingly, he made the waiver of
his right to counsel "equivocal" simply by ac-
knowledging the fact that it would be easier for
someone not in jail to make copies and serve them
on the court than it would be for him while in jail.

If this Court is going to make such combined
requests "equivocal" as a matter of law, then it
should also demand that a defendant be so in-
formed *before* the request is made or allow a
defendant to renew the request after the trap has
been sprung.[4] Michigan, as well as federal, law
requires that a pro se defendant be alerted to the
dangers and disadvantages of self-representation
"so that the record will establish that he knows
what he is doing and his choice is made with eyes
open." *Anderson* at 368, and citing *People v Hol-
comb,* 395 Mich 326, 337; 235 NW2d 343 (1975),
and *Faretta v California,* 422 US 806, 835; 95 S Ct
2525; 45 L Ed 2d 562 (1975). A defendant does not
"know what he is doing" and does not have his
"eyes open" when he is not informed that a re-
quest to have an attorney assist with such mun-
dane matters as making copies will vitiate the
very right he seeks to assert. As *Faretta* noted:

> "There is something specially repugnant to jus-
> tice in using rules of practice in such a manner as
> to debar a prisoner from defending himself, espe-
> cially when the professed object of the rules so
> used is to provide for his defence." [*Faretta* at 822-
> 823, quoting 1 Stephen, A History of the Criminal
> Law of England, 341-342 (1883).]

---

[4] Neither *Faretta v California,* 422 US 806; 95 S Ct 2525; 45 L Ed
2d 562 (1975), *Anderson,* nor the court rules limit the number of
times such requests can be made. In fact, Dennany made no less than
four of them. Theoretically then, if a defendant fell into this trap, the
defendant could simply renew his request without the offending plea
for standby counsel.

The injustice of such an approach is compounded by the fact that common wisdom, and actual experience, indicate that standby counsel is almost invariably appointed whenever a defendant chooses to represent himself.[5] It is fundamentally unfair to punish a defendant for requesting what all assume will be provided in the first place.[6] To allow the uninformed to unwittingly waive their right of self-representation merely by requesting standby counsel "is to imprison a man in his privileges and call it the Constitution." *Adams v United States ex rel McCann,* 317 US 269, 280; 63 S Ct 236; 87 L Ed 268 (1942).

### III

Implicit in the lead opinion is the conclusion that strict compliance with MCR 6.005 and the *Anderson* requirements will prevent creating an "appellate parachute" in cases in which a criminal defendant chooses to exercise the right of self-representation. *Ante* at 447. I wholeheartedly agree. I would not, however, be so subtle about it. I would explicitly require strict compliance with the court rules.

The court rules provide the minimum level of procedural protection that must be afforded every criminal defendant in this state when asserting the Michigan constitutional right of self-representation. They speak in an unambiguous, mandatory fashion:

(D) Appointment or Waiver of a Lawyer. If the

---

[5] As the lead opinion notes, many federal circuits and the ABA Standards for Criminal Justice require as much. *Ante* at 441-442 and n 20.

[6] This is exactly what happened to Jones. Just before his motion, his appointed attorney told the court: "I have indicated to him [Jones] that I am assuming the Court will probably ask me to stay on [in] an advisory capacity." After granting the motion, the court did just that.

court determines that the defendant is financially unable to retain a lawyer, it must promptly appoint a lawyer and promptly notify the lawyer of the appointment. *The court may not permit the defendant to waive the right to be represented by a lawyer without first*

(1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation, and

(2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer.

(E) Advice at Subsequent Proceedings. Even though a defendant has waived the assistance of a lawyer, *the record of each subsequent proceeding* (e.g., preliminary examination, arraignment, proceedings leading to possible revocation of youthful trainee status, hearings, trial or sentencing) *must affirmatively show* that the court advised the defendant of the right to a lawyer's assistance (at public expense if the defendant is indigent) and that the defendant waived that right. Before the court begins such proceedings,

(1) the defendant *must* reaffirm that a lawyer's assistance is not wanted; or

(2) if the defendant requests a lawyer and is financially unable to retain one, the court *must* appoint one; or

(3) if the defendant wants to retain a lawyer and has the financial ability to do so, the court *must* allow the defendant a reasonable opportunity to retain one. [MCR 6.005. Emphasis added.]

The best way to foreclose appeals in these situations is to follow the letter of the court rules. In light of the explicit and comprehensive nature of the rules, their simple recitation virtually *guarantees* that an appellate parachute is not created. This Court should be demanding strict compliance

with the court rules if for no other reason than to forestall the onslaught of appellate claims that will surely arise as courts struggle to determine just how imprecise a recital must be before a defendant's constitutional rights will be protected. See *ante* at 439.

Levin, J., concurred with Cavanagh, C.J.

Boyle, J. (*concurring in part and dissenting in part*). I concur with the result of the lead opinion in *Dennany.* I also agree that a request for standby counsel is not, as a matter of law, an unequivocal assertion of a desire to proceed pro se. I write separately to disagree with the Court's suggestion that a departure from the requirements of MCR 6.005(D) and (E) will justify reversal of a conviction. Where the record establishes that a waiver of the right to counsel is knowing and voluntary, reversal is not justified. Consequently, I would reverse the decision of the Court of Appeals with regard to defendant Jones and reinstate his conviction.

I

The court rule imposes a number of strict requirements on a trial judge confronted with a defendant who asserts a desire to proceed pro se.[1]

---

[1] First, pursuant to MCR 6.005(D):

The court may not permit the defendant to waive the right to be represented by a lawyer without first

(1) advising the defendant of [a] the charge, [b] the maximum possible prison sentence for the offense, [c] any mandatory minimum sentence required by law, [d] and the risk involved in self representation, and

(2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer.

Although, the remedy for a trial court's failure to comply with all or some of these requirements is the central issue to be decided in this case,[2] the

Second, pursuant to MCR 6.005(E):

Even though a defendant has waived the assistance of a lawyer, the record of each subsequent proceeding (e.g., preliminary examination, arraignment, proceedings leading to the possible revocation of youthful trainee status, hearings, trial or sentencing) must affirmatively show that the court advised the defendant of the right to a lawyer's assistance (at public expense if the defendant is indigent) and that the defendant waived that right. Before the court begins such proceedings,

(1) the defendant must reaffirm that a lawyer's assistance is not wanted; or

(2) if the defendant requests a lawyer and is financially unable to retain one, the court must appoint one; or

(3) if the defendant wants to retain a lawyer and has the financial ability to do so, the court must allow the defendant a reasonable opportunity to retain one.

Finally, in *People v Anderson,* 398 Mich 361, 367-368; 247 NW2d 857 (1976), the Court set forth the parameters for effectuating self-representation:

[1] First the request must be unequivocal. . . .

[2] Second, once a defendant has unequivocally declared his desire to proceed *pro se* the trial court must determine whether defendant is asserting his right knowingly, intelligently and voluntarily. The trial court must make the *pro se* defendant aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and that his choice is made with his eyes open. Defendant's competence is a pertinent consideration in making this determination. But his competence does not refer to legal skills, "[f]or his technical legal knowledge, as such, was not relevant to an assessment of his knowing exercise of the right to defend himself." [Citations omitted.]

[3] The third and final requirement is that the trial judge determine that the defendant's acting as his own counsel will not disrupt, unduly inconvenience and burden the court and the administration of the court's business.

[2] The Court of Appeals in *People v Jones* encouraged the prosecutor to petition this Court:

[W]e do not ignore, nor are we unsympathetic to, the arguments by the prosecutor. . . . However, neither the court rule nor the case law recognizes this as an exception to the strict

lead opinion would not expressly decide it.[3] Instead, the lead opinion generally alludes to the nature of the noncompliance and specifically requires reaffirmance of the waiver at each subsequent proceeding. *Ante* at 434. I would reaffirm the nonformalistic approach approved of in *People v Anderson,* 398 Mich 361, 370; 247 NW2d 857 (1976). A defendant validly asserts the right to proceed pro se when the record indicates that "he knowingly and intelligently forgoes his right to counsel" and "is able and willing to abide by rules of procedure and courtroom protocol." *McKaskle v Wiggins,* 465 US 168, 173; 104 S Ct 944; 79 L Ed 2d 122 (1984).

While the court rules provide useful guidance to trial courts, our experience refutes the proposition that "appellate parachutes" are closed by establishing lengthy check lists.[4] When a lapse in the

requirements imposed upon the trial court before allowing a defendant to proceed in propria persona. While we urge the prosecutor to seek leave to appeal to the Supreme Court to have the Court reconsider whether such strict requirements are necessary where a defendant is represented at the motion to be allowed to proceed in propria persona, or where there is standby counsel available throughout the proceedings, it is for the Supreme Court, and not this Court, to adopt such an exception. [Unpublished opinion per curiam, decided October 29, 1992 (Docket No. 110202).]

[3] See *ante* at 439, where the lead opinion notes:

Where there is error but it is not one of complete omission of the court rule and *Anderson* requirements, reversal is not necessarily required. Cf. *Guilty Plea Cases,* 395 Mich 96, 122-124; 235 NW2d 132 (1975). Whether a particular departure justifies reversal "will depend on the nature of the noncompliance." *Id.,* p 113.

In contrast, Chief Justice CAVANAGH, writing separately, would "explicitly require strict compliance with the court rules." *Ante* at 456.

[4] In *People v Blue,* 428 Mich 684, 689; 411 NW2d 451 (1987), Justice GRIFFIN, writing for a unanimous Court, noted: "[w]e have held that technical noncompliance with the court rules in accepting a plea of guilty or nolo contendere does not necessarily require reversal. *In re*

litany provides an avenue for appellate relief, adoption of a litany approach creates an appellate parachute. All things being equal, the longer the litany and the more times it is required, the more likely it is that a lapse will occur.

A

Neither the precedents of this Court nor those of the United States Supreme Court require a formalistic approach. In *People v Anderson, supra* at 370, this Court noted that the requirement of a knowing and intelligent waiver stems from *Johnson v Zerbst,* 304 US 458; 58 S Ct 1019; 82 L Ed 1461 (1938), which endorsed a case-by-case approach when reviewing a waiver, including consideration of "the background, experience and conduct of the accused." *Anderson, supra* at 370. Adopting such an approach in *Anderson,* we reversed the decision of the Court of Appeals, because the defendant's sophisticated responses and history of involvement with the criminal justice system indicated "that he knew what he was doing and made his choice with eyes open." *Id.* at 371.

Likewise, as the United States Supreme Court explained in *McKaskle v Wiggins, supra* at 173, the constitutional requirements for proceeding pro se are straightforward: "an accused has a Sixth Amendment right to conduct his own defense, provided only that he knowingly and intelligently forgoes his right to counsel and that he is able and willing to abide by rules of procedure and courtroom protocol." Thus, both Michigan[5] and federal

*Guilty Plea Cases,* 395 Mich 96, 113; 235 NW2d 132 (1975)." The Court went on to hold that a trial court properly accepted a valid plea of guilty but mentally ill in a case in which there was less than strict compliance with procedural requirements.

[5] The assertion in the lead opinion that art 1, § 13 of the state constitution grants a state right to proceed pro se in a criminal trial is problematic.

precedent hold that a defendant may proceed pro
se if he makes a knowing and intelligent waiver of
his right to counsel and is able to properly conduct
himself in the courtroom.

We should adopt as the standard for appellate
review this shorter and simpler approach, which
allows appellate courts to assess whether a defen-
dant made his decision to proceed pro se " 'with
eyes open.' " *Faretta v California,* 422 US 806, 835;
95 S Ct 2525; 45 L Ed 2d 562 (1975). First, the
defendant must waive his right to counsel "know-
ingly and intelligently." *Id.*[6] When seeking a
waiver, the important inquiry is whether a defen-

---

Article 1, § 13 states:

A suitor in any court of this state has the right to prosecute
or defend his suit, either in his own proper person or by an
attorney.

Article 1, § 20 provides that "[i]n every criminal prosecution, the
accused shall have the right . . . to have the assistance of counsel for
his defense . . . ." Substantially similar provisions were present in
the Constitution of 1850.

Until the nineteen-sixties and *Faretta v California,* 422 US 806; 95
S Ct 2525; 45 L Ed 2d 562 (1975), art 1, § 13 was only applied in civil
cases. Considering both the language of the provision and the fact
that application of art 1, § 13 to the criminal setting makes the right
to an attorney found in art 1, § 20 redundant, such a reading is
understandable. This Court in *Anderson,* without discussion, recog-
nized § 13 as the operative constitutional provision in this area. This
is an issue of some importance. If § 13 does not provide a right to self-
representation in the criminal setting, we would need to find it either
implicitly in § 20 of the constitution or under statute. While a right to
self-representation may exist under MCL 763.1; MSA 28.854 (see *ante*
at 443, n 22), under the historical jurisprudence approach in *Sitz v
Dep't of State Police,* 443 Mich 744, 763; 506 NW2d 209 (1993), it is
open to question whether we would discover such a right under the
state constitution.

[6] In determining whether the waiver is "knowingly and intelli-
gently" made, the inquiry found in MCR 6.005(D) "advising the
defendant of the charge, the maximum possible prison sentence for
the offense, any mandatory minimum sentence required by law, and
the risk involved in self-representation," is useful. However, approval
of the usefulness of this inquiry, apparently modeled on the plurality
in *Von Moltke v Gillies,* 332 US 708; 68 S Ct 316; 92 L Ed 309 (1948),
should not be viewed as requiring a formalistic approach on appeal.

dant knows what his rights are, and the risks, "dangers and disadvantages" of waiving those rights and going it alone. *Id.* Any defendant who either refuses to, or is incapable of, fully, or unequivocally, waiving his right to counsel, will not be permitted to proceed pro se.[7] In the second inquiry, the judge must determine whether the defendant "is able and willing to abide by rules of procedure and courtroom protocol." *McKaskle* at 173. These two inquiries are all that *Faretta, McKaskle,* and *Anderson* require of a trial judge who is charged with determining whether an accused will be permitted to conduct his own defense.

As the lead opinion acknowledges, the majority of federal courts have adopted a nonformalistic approach when determining whether a defendant has properly waived his right to counsel: "[t]he common thread that can be gleaned from [the federal] cases is that '[t]he ultimate test is not the trial court's express advice, but rather the defendant's understanding.' " *Ante* at 431. LaFave and Israel explain further:

> Other courts take the position that *Faretta* requires only that the defendant have been aware of the disadvantages of proceeding pro se, and that awareness can be established without regard to any admonitions or colloquies. "Because the test [for a valid waiver] concerns what the accused understood rather than what the court said or

---

[7] We agree with the lead opinion that the Court of Appeals erred in concluding as a matter of law that a request for standby counsel is an unequivocal request to proceed pro se. Although sympathetic to the views of the Chief Justice that a request for standby counsel may create a trap for the defendant who really wants to go it alone, *ante* at 454, his solution requiring advice of no right to standby counsel creates the trap for the unwary trial judge—the threat of reversal on appeal for failure to comply with rigid requirements. It is precisely such appellate pitfalls that counsel the factual approach to the issue on appeal adopted in *Anderson.*

understood, explanations are not required." A
waiver is constitutionally acceptable where such
factors as defendant's involvement in previous
criminal trials, his representation by counsel be-
fore trial, and his explanation of his reasons for
proceeding pro se indicate that he was fully aware
of the difficulties of self-representation. [2 LaFave
& Israel, Criminal Procedure, § 11.5, p 47.]

This approach is consistent with that taken in
*Anderson,* in which this Court held that although
"the trial court did *not* explicitly inform defendant
Overby of the dangers and disadvantages of self-
representation . . . the sophisticated and compre-
hensive nature of defendant Overby's expressed
reasons for dissatisfaction with his appointed coun-
sel, together with his history of personal involve-
ment with the criminal justice system, indicates
that he knew what he was doing and made his
choice with eyes open." *Id.* at 370-371. (Emphasis
added.) Finally, this nonformalistic approach is
consistent with this Court's reluctance to reverse
criminal convictions on the basis of technical non-
compliance with the Michigan Court Rules.[8]

B

The requirement in MCR 6.005(E) that a trial
court obtain a new waiver at every subsequent
proceeding is neither compelled nor discussed by
*Faretta, McKaskle,* or *Anderson.* The imposition of
such a requirement for a valid waiver runs
counter to the notion, present in all three opin-
ions, that self-representation is a right. A defen-

[8] In the *Guilty Plea Cases,* 395 Mich 96, 123-124; 235 NW2d 132
(1975), this Court abandoned the formalistic approach of former GCR
1963, 785.7 and recognized that in cases of waiver, the inquiry is not
whether there was an imprecise recital of rights or omission of some
given right. The inquiry is whether "the defendant understood what a
trial is and that by pleading guilty he was knowingly giving up his
right to a trial and the rights and incidents of a trial." *Id.* at 124.

dant who knowingly and intelligently exercises his right to represent himself has made a choice. Given that the likely consequence of such a choice will be to the defendant's disadvantage, a searching inquiry into the degree to which the defendant understands the alternatives and consequences is initially appropriate. Assuming, however, that a defendant has in fact intelligently exercised that right at a stage in the proceeding, he need not be subjected at each new proceeding to an intimation that the choice was a poor one.

We do not permit defendants to waive counsel at arraignment on the warrant despite expression of a desire to do so. Unless a defendant says he will retain counsel, an attorney is appointed; "assistance of counsel is automatic; assuming the right is not waived, assistance must be made available at critical stages of a criminal prosecution, whether or not the defendant has requested it." *Adams v Carroll,* 875 F2d 1441, 1444 (CA 9, 1989) (citation omitted). We do not permit defendants to waive rights at felony arraignment without the assistance of counsel, nor do defendants express a desire for self-representation at preliminary examination.[9] The issue of self-representation is typically a trial-stage problem for the trial judge.

At the stage in the criminal process when the issue of self-representation commonly arises, the most sophisticated defendant is well aware of the right to counsel. He has, in fact, been advised of the right or provided with counsel in at least two previous court appearances. Thus, it should not be presumed that an individual who repeatedly receives the assistance of counsel and negotiates the barriers to waiver "forgets" the right to be repre-

[9] Standard forms approved by the State Court Administrative Office require the agreement of counsel and the defendant, after advice of rights, to waiver of the examination.

sented or the consequences of self-representation.[10] Literal compliance at each successive appearance before the same trial judge is redundant.

The formalistic waiver requirement of MCR 6.005(E), which dictates a new waiver at each successive stage of the prosecution does not serve to further any obvious policy. To be sure, some defendants may change their minds about wanting to proceed pro se and request counsel. There is nothing in our case law that prevents a trial judge from readvising a defendant on the right to counsel if the circumstances require and permit it, just as there is nothing requiring a trial judge to readvise a pro se defendant on the right to counsel.

II

Applying the nonformalistic approach employed by the majority of federal courts and this Court in *Anderson* to the particular facts in *People v Jones,* defendant Jones made a knowing and intelligent waiver of his right to counsel,[11] and therefore his conviction should be affirmed.

---

[10] Neither the court rule nor the lead opinion explain exactly what the trial judge is required to do to obtain a new waiver of the right to counsel pursuant to MCR 6.005(E). If, as the commentary to MCR 6.005(D) hints, the litany is only required when procuring the defendant's initial waiver, and if, as the lead opinion states, the *Anderson* litany is also only required at the initial waiver, then I calculate that in the average case involving five proceedings a trial judge must go through approximately seventeen steps to live up to the commands of the lead opinion.

This is a conservative estimate, and it is likely that the number of steps a trial judge will go through will be much higher. Simply informing a defendant that he has the right to an attorney and then asking him to waive it hardly resembles the intelligent and knowledgeable waiver of the right to an attorney that most judges are accustomed to receiving. Moreover, because such a perfunctory waiver itself may create a new appellate issue, trial judges might attempt to obtain a full waiver per MCR 6.005(D) and *Anderson* to protect the record.

[11] Voluntariness is not an issue on these facts. Although the defendant expressed dissatisfaction with the performance of appointed

To begin with, Jones, like the defendant in *Anderson,* had a history of personal involvement with the criminal justice system consisting of six prior felonies and four misdemeanors. Jones was fully apprised of his right to counsel at the first arraignment and the preliminary examination and exercised this right by asking for and receiving appointed counsel.

Additionally, defendant Jones was represented by counsel during the motion when he asked to proceed pro se. Jones and counsel conferred before the motion was granted, and counsel confirmed that Jones wished to proceed pro se and that, in his opinion, Jones had the intelligence and competence to do so. Jones' performance in motions and at trial, including knowledge of the criteria considered in setting bond, knowledge of the 180-day rule, and detailed discovery requests, confirm this assessment.

Moreover, Jones' statement at the motion hearing that he would "appear in pro per" but would have "no objection" to standby counsel providing clerical assistance, suggests that his level of sophistication regarding representation pro se included an understanding that counsel's participation might constitute an interference with the pro se right in the eyes of the law. Whether or not Jones' understanding of the complexity of representation pro se was in fact so sophisticated, his clear understanding that he could waive or assert the right to counsel at each subsequent proceeding is shown in his penultimate exchange with the

counsel, defendant chose to proceed pro se because he wanted the trial to start on the scheduled date, and substitute counsel would not, in defendant's mind, have sufficient time to prepare. This is not a case in which it can be argued that the trial judge coerced the defendant into choosing to proceed pro se. See, generally, *Maynard v Meachum,* 545 F2d 273, 278 (CA 1, 1976).

trial court when, after having confirmed his desire to proceed with counsel at sentencing, he objected to not having been permitted to personally examine the file in this matter. In these circumstances, it is abundantly clear that Jones fully understood his right to be represented by counsel and knowingly relinquished it.

Defendant Jones had a high school education, some college education, and was described by both counsel and the court as extremely intelligent. Given the totality of circumstances, "it is 'inconceivable that defendant did not know what he was doing.' " *People v Mack,* 190 Mich App 7, 16; 475 NW2d 830 (1991). Jones knowingly waived the right to counsel.[12]

Finally, although not briefed or argued, and therefore not decided, I observe that even if Jones had not validly waived his right to counsel, it is a distinct question whether error arising from the lack of full representation would be prejudicial.[13]

---

[12] This waiver was also unequivocal. Although I agree with the lead opinion that a request to proceed with standby counsel is not unequivocal as a matter of law, I do not agree that it can "never be deemed to be an unequivocal assertion of defendant's rights." *Ante* at 446.

When read in its entirety, the colloquy between defense counsel, the defendant, and the court suggests that Jones was assenting to Mr. Narragan's appointment as standby counsel, not equivocating on his desire to proceed pro se.

While discussion of standby counsel should be postponed until after the defendant fully waives his right to counsel and is proceeding pro se, when the subject does arise, as in this case, it is the trial judge who is in the best position to decide whether or not the defendant is equivocating with respect to his desire to proceed pro se. In the waiver context, Sixth Amendment rights do not turn on the expression of magic words, but on the understanding of the accused. That understanding is best determined as a question of fact by the trial judge, see *Adams v Carroll, supra* at 1445.

[13] A denial of the right to proceed pro se can never be harmless error. See *McKaskle v Wiggins, supra,* 465 US 177, n 8. However, where, as here, the issue is whether a trial court obtained a valid waiver of counsel before allowing a defendant to proceed pro se, federal circuit courts have found a defective waiver to be harmless error when an examination of the whole record indicates no reason-

CONCLUSION

Accordingly, I would hold that a defendant may proceed pro se "provided only that he knowingly and intelligently forgoes his right to counsel and that he is able and willing to abide by rules of procedure and courtroom protocol." *McKaskle, supra* at 173. Whether a waiver is knowing and intelligent is to be assessed in a nonformalistic manner. *Anderson, supra* at 370. Because a review of the record indicates that the defendant in *People v Jones* waived his right to counsel, I would reverse the decision of the Court of Appeals in that case and remand for consideration of the other issues raised and not addressed below.

RILEY, J., concurred with BOYLE, J.

able possibility that the defendant would have been found not guilty had he been represented by counsel. *United States v Gipson,* 693 F2d 109, 112 (CA 10, 1982), cert den 459 US 1216 (1983); *Richardson v Lucas,* 741 F2d 753, 757 (CA 5, 1984). The harmless error approach seems especially appropriate in cases such as the present, in which a defendant receives advice throughout the trial from standby counsel, the same counsel who would have represented the defendant had he not asserted his desire to proceed pro se.

A review of the record indicates that the defendant, in fact, was rather successful representing himself; "his conduct prior to and during trial demonstrated more than a passing sophistication in criminal matters." *McQueen v Blackburn,* 755 F2d 1174, 1178 (CA 5, 1985). Even at sentencing, Jones was actively preserving objections made at trial.