*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* BLOCK/NYGAARD, Minors.

UNPUBLISHED
November 10, 2022

No. 360449
Gogebic Circuit Court
Family Division
LC Nos. 2018-000069-NA
            2019-000042-NA

Before: SAWYER, P.J., and MARKEY and SWARTZLE, JJ.

PER CURIAM.

Respondent-father appeals as of right the orders terminating his parental rights to LN, JN, and LB[1] under MCL 712A.19b(3)(c)(*i*) ("The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age."), (g) ("The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age."), and (j) ("There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent."). The court also terminated respondent's rights to LB under MCL 712A.19b(3)(a)(*i*) ("The child's parent has deserted the child for 91 or more days and has not sought custody during that period.").

Respondent does not argue that there was insufficient evidence presented to exercise jurisdiction over him. Nor does respondent contest the trial court's factual finding of statutory grounds for termination or its best-interests determination. Instead, respondent challenges

---

[1] The mother of the children was also a respondent. Respondent-father was not married to the mother of all of the children and never took a paternity test to determine whether he was the father of LB, who was born after the petition in lower court number 2018-000060-NA was filed and who was the subject of the petition in lower court number 2019-000042-NA. The court terminated whatever rights respondent might have had to LB. The court also terminated the mother's rights. The mother is not a party to this appeal.

-1-

procedural aspects of the proceedings held in the trial court, arguing that they were sufficiently problematic as to necessitate a reversal of the trial court's order terminating his parental rights. Because we find no error requiring reversal, we affirm.

## I. BASIC FACTS

Petitioner, the Department of Health and Human Services (DHHS), filed a petition on September 17, 2018, seeking jurisdiction over LN and JN, and seeking removal of the mother from the home following an incident of domestic violence between respondent and the mother that occurred in the presence of the children. The mother was in jail as a result of the incident at the time of the emergency removal and preliminary hearing. The court authorized the petition and ordered that the mother be removed from the home and that LN and JN, as well as RB, who is not respondent's legal or biological child, be released to respondent under DHHS supervision.

The mother entered a plea and the court took jurisdiction over her, but respondent denied the allegations in the petition. Respondent requested a trial. The court ordered the mother to participate in services recommended by DHHS in an effort to reunify the family. The court encouraged respondent to voluntarily comply with any services recommended by DHHS until an adjudication trial could be held. The court also ordered that the mother have no unsupervised contact with respondent or with the children

The children appeared to be doing well in respondent's care. In July 2019, the parties proposed that the court grant respondent a juvenile guardianship over RB and that, if respondent could provide documentation to support his claim that he was participating in counseling, he be dismissed from the case. Respondent agreed to cancel the August 15, 2019 adjudication trial and proceed instead with a permanency planning hearing on that date. On August 15, the court changed the permanency planning goal for RB to legal guardianship and ordered DHHS to complete the required background check and central registry checks on respondent and to complete a home study. The court also ordered respondent to provide his counseling records and to enroll RB in counseling at DOVE.

In late August 2019, DHHS received a complaint that respondent was leaving two-year-old LN and one-year-old JN in the care of eight-year-old RB when he was at work. Respondent signed a safety plan in which he agreed that he would not go to work if he did not have an adult to provide childcare for the children. At a hearing on November 22, 2019, CPS worker Gwenn Stengard told the court that respondent was not cooperating with home visits and that he had not responded to her phone calls or text messages since October 7. Respondent canceled a home visit on October 31. On November 1, RB's school contacted DHHS because RB was sick and the school was unable to reach respondent. Respondent did not provide his counseling records, nor did he sign a consent form for RB to begin counseling at DOVE. Stengard said that DHHS was receiving reports that the mother was staying in the home. On November 3, the mother gave birth to LB and DHHS filed another petition seeking jurisdiction over LB. CPS worker Elizabeth Fyle attempted to see respondent as part of her investigation and was unable to do so. When Fyle went to the home she saw respondent in the window, but he would not answer the door. Fyle met with RB at school and was told that the mother had been staying at the home "off and on" and would occasionally watch the children while respondent was at work. Fyle observed the mother leaving the home on November 19.

The court considered the mother a danger to the children because she had not participated in any services to address the issues that caused the children to come into care, and expressed concern that respondent continued to place the children in danger by defying the no-contact order and allowing the mother to be in the home. The court put the guardianship on hold and scheduled an adjudication hearing for respondent. The court again ordered that the mother was not to reside in the home or have any unsupervised contact with the children or with respondent. The court again ordered respondent to provide his VA records and to sign a release for RB to attend counseling at DOVE.

On December 29, 2019, DHHS filed a petition seeking removal of the children from the home. The petition alleged that on December 17, 2019, CPS received a complaint that respondent was leaving the children home alone while he was at work. On December 18, CPS worker Fyle met with respondent regarding this concern. Respondent denied leaving the children home alone. He told Fyle that a person named Kaylee Casperson was coming from Minnesota to stay with him and help with the children. When Fyle attempted to talk to respondent about a diaper rash that she noticed on both LN and JN, respondent told Fyle to leave the home. On December 28, Casperson left the home and called 911 to report that a physical altercation had occurred in the home between her and the children's mother. When Deputy Adam Zak responded to the home neither Casperson nor the children's mother were at the home. Deputy Zak contacted CPS and reported that the home smelled strongly of feces and urine and had feces on the floor and overflowing garbage. The children appeared to be dirty. CPS commenced an investigation. Casperson made a number of statements to the on-call worker. Casperson said that she had been staying at the home for a week and that the mother had been in the home. She said that respondent was not nice to RB, and RB was expected to take care of the younger children even when adults were in the home. Casperson witnessed respondent and the mother wake RB up during the night to care for the children. Casperson said that respondent and the mother constantly argued in front of the children. The home had bed bugs and the children had bed bug bites. Casperson said that she confronted the mother and respondent with her concerns about their lack of parenting and the condition of the home. Casperson said that an argument ensued between her and the mother, who physically assaulted Casperson by hitting her in the face in the presence of the children. According to Fyle, later the same night, respondent admitted to law enforcement that the children were home alone and he agreed to go home from work to be with them. Respondent denied the allegations but did not contest removal of the children.

The court acquired jurisdiction over respondent following a jury trial in September 2020, and the initial disposition order was entered on October 22, 2020. In June 2021, DHHS filed a supplemental petition seeking termination of both parents' parental rights. DHHS alleged that respondent did not participate in parenting time or seek custody of the children from December 22, 2020 through April 15, 2021. When parenting time resumed via video technology on April 18, 2021, LN was deeply affected by seeing respondent and actively tried to end the call, flee, and hide. Many of LN's maladaptive behaviors returned, such as hitting, having nightmares, and having problems toileting. Respondent was offered services for over a year, but failed to comply

with any aspect of his parent-agency treatment plan (PATP).[2] After a termination hearing on January 25 and 26, 2022, the court found statutory grounds to terminate respondent's parental rights and that termination was in the children's best interests.

## II. ANALYSIS

### A. TIMELINESS OF ADJUDICATION TRIAL

Respondent argues that the adjudication hearing held on September 23 and 24, 2020 was untimely under MCR 3.972(A) and that his due-process rights were violated by the delay. This Court reviews de novo whether child-protective proceedings complied with a parent's right to procedural due process, which presents a question of constitutional law. This Court reviews de novo whether child-protective proceedings complied with a parent's right to procedural due process, which presents a question of constitutional law. *In re Sanders*, 495 Mich 394, 403-404; 852 NW2d 524 (2014).

"If the child is not in placement, the trial must be held within 6 months after the authorization of the petition unless adjourned for good cause under MCR 3.923(G)." MCR 3.972(A). See also *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008). When the petition was authorized, LN and JN were not "in placement," because they were living with him. See *Utrera*, 281 Mich App at 10; MCR 3.903(C)(10).[3] As a result, MCR 3.972(A) required the adjudication trial to occur within six months of the date the petition was filed "unless adjourned for good cause under MCR 3.923(G)."[4] See also *Utrera*, 281 Mich App at 10. The plain language of the court rule makes it clear that the relevant time period is between the filing of the petition and the trial. Respondent's trial was held on September 23 and 24, 2020.

Clearly, the adjudication hearing was held outside the applicable six-month window required by MCR 3.972(A). However, the record reflects that the court and respondent's counsel agreed that the initial delay was not the fault of anyone; it appears that the delay was attributable to scheduling conflicts. The original June 20, 2019 trial date had to be rescheduled because the jury courtroom was not available for trial because of a previously scheduled district court jury trial. Respondent's counsel acknowledged that the delay was not the fault of the court. The court then scheduled the trial for the earliest possible date that was available for a jury trial and agreeable to

---

[2] The recommendations in the PATP included mental health and substance abuse assessments and compliance with the recommendations, parenting class, domestic violence counseling, random drug testing, parenting time, and weekly contact with the caseworker. The PATP also provided for respondent to maintain clean and appropriate housing and to provide copies of documents showing proof of residence, paystubs, and insurance for his vehicle.

[3] MCR 3.903(C)(10) defines "placement" as "court-approved transfer of physical custody of a child to foster care, a shelter home, a hospital, or a private treatment agency."

[4] MCR 3.923(G) provides that "[a]djournments of trials or hearings in child protective proceedings should be granted only (1) for good cause, (2) after taking into consideration the best interests of the child, and (3) for as short a period of time as necessary."

the parties—August 15, 2019. In July 2019, the parties agreed to cancel the August 15 trial in light of a proposal for the court to grant a juvenile guardianship with respect to RB and dismiss the case against respondent if certain requirements were met. Unfortunately, circumstances had changed. DHHS learned that respondent had allowed the mother into the house in violation of the no-contact order, and respondent had failed to supply DHHS with documents ordered to be produced before a guardianship could be established. These circumstances were brought to the court's attention at a hearing in November 2019. In light of respondent's defiance of the no-contact order, and the risk of danger to LN and JN by having contact with the mother, the court put the juvenile guardianship on hold and concluded that it was necessary to proceed with an adjudication trial. Consequently, the court again had to schedule a trial for the earliest possible date that was available and agreeable to the parties and when the courtroom was available for a jury trial— May 12, 2020. Although not absolutely clear from the record, it appears that the May 2020 jury trial had to be rescheduled because of the COVID-19 pandemic. The trial was rescheduled and held in September 2020. The record thus reflects that the delays in this case generally were either for good cause—scheduling conflicts and the COVID-19 pandemic[5]—or agreed to by respondent.

## B. WAIVER OF COUNSEL AT THE ADJUDICATION TRIAL

Relying on the waiver of counsel requirements for criminal proceedings set forth in *People v Anderson*, 398 Mich 361; 247 NW2d 857 (1976), respondent argues that reversal is required because the trial court did not comply with the requirements for obtaining a valid waiver of his right to counsel at the adjudication trial. Respondent failed to preserve this issue by raising a challenge to the validity of his waiver of counsel in the trial court. This issue is not preserved. *People v Cain*, 498 Mich 108, 114-115; 869 NW2d 829 (2015). Unpreserved adjudication errors raised after a trial court has terminated parental rights are reviewed for plain error affecting substantial rights. *In re Ferranti*, 504 Mich 1, 29; 934 NW2d 610 (2019). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Utrera*, 281 Mich App at 9; see also *Carines*, 460 Mich at 763. Once these three requirements are satisfied, "an appellate court must exercise its discretion in deciding whether to reverse." *Carines*, 460 Mich at 763. Reversal is not warranted if the plain, forfeited error does not seriously affect the fairness, integrity, or public reputation of judicial proceedings. *Id*. at 763-764.

Respondent was entitled to be represented by a lawyer at the adjudication trial. *In re Williams*, 286 Mich App 253, 275-276, 779 NW2d 286 (2009). Counsel was appointed to represent respondent despite his failure to request counsel. Counsel represented respondent at each hearing beginning with the pretrial hearing on October 1, 2018. On September 4, 2020, counsel moved to withdraw and to adjourn the adjudication trial scheduled for September 24 in the event counsel was allowed to withdraw. At the hearing on the motions, counsel told the court that she

---

[5] In *In re Sanborn*, 337 Mich App 252, 269-270; 976 NW2d 44 (2021), this Court noted that delays in child-protective hearings in 2020 could not be attributed to the trial court in light of executive orders issued by the governor and administrative orders issued by our Supreme Court.

did not have a productive attorney-client relationship with respondent, that she was unable to have substantial communication with him, and that she did not believe that respondent wanted counsel.

The court then engaged in a colloquy with respondent:

>*The Court*:  I think my question is going to be for Mr. Nygaard.  Mr. Nygaard, do you wish to represent yourself at this trial?

>*Respondent*:  I would like to have counsel just for reasons that I'm not a lawyer.  Other than that, I could represent myself with no problems to a jury of my peers.  Yeah.

>*The Court*: Okay, I—that doesn't really answer my question.  Do you want to handle this case yourself or do you want standby counsel, is that what you're saying?

>*Respondent*:  I, yeah, stand-by counsel would be nice.

>*The Court*:  Alright, so you understand that if you—you have the right to represent yourself, but you are held to the same standards as a party who is represented and you're not going to get any advice from the Court.  You're not going to get any slack cut and I'm not going to put up with any disruptions or any inappropriate behavior in front of the jury.  Do you understand that?

>*Respondent*: Absolutely.  I don't have any intentions of any of that either.  I don't really—

>*The Court*: Alright then—

>*Respondent*: —know what [counsel] is—

>*The Court*: We have had hearings where you interject when someone else is speaking or you make little comments, and I don't want that to happen.  That will not happen in a trial.  Do you understand that?

>*Respondent*: Absolutely, ma'am.

>*The Court*: Are you satisfied—I want you to think about this.  Don't just answer quickly.  Are you satisfied that you are going to be able to represent your interests better than [counsel] could do for you?

>*Respondent*: I think at this point if I could get a different lawyer, it'd be better.

>*The Court*: No.  We're not lawyer shopping . . . .

The court summarized respondent's options as follows:

Well, my approach to this is going to be one of two things. I guess one of three things. You and [counsel] figure out a way to work together and this trial, it will go forward on the 23rd with her representing you. . . . That's one. The other option is [counsel] represents you in a stand-by role where you take the lead. That means you ask the witness questions, you do the jury selection or whatever the two of you together can agree upon. But she's there to provide you with legal advice during the course of the trial. The third option is [counsel's] motion to withdraw is granted and you represent yourself all by yourself at trial. But I agree with [the guardian ad litem's] comments that, and I didn't get them all because it wasn't all real clear, but, and you've kind of eluded [sic] to it too. This case has been out there for two years. It's way past time to get something finalized in this matter. I know there was a lot of work early on, where you were working with the Department without the need of an adjudication, but two years into a case is way too long for adjudication. All that means is jurisdiction of the Court over you and I'm not moving the trial. Let me just put it to you that way. That is not in anybody's best interests. So, those are the three options that Court has. Tell me which option you would prefer.

Respondent stated that he "would prefer the second option because I—I will need some assistance in lining up witnesses and evidence and things like that for trial." The court and respondent continued the colloquy:

*The Court*: Okay, that means you're going to need to work with [counsel] prior to trial to get your witnesses all lined up and get all of that done. She will also be next to you at trial or within six feet, so that she can provide you with legal advice during the course of the trial. I think you may well find part way through trial that you want to have [counsel] step in. That's been the case in several other cases like this where clients have contended that they think they can do a better job representing their interests and once they get into the hearing, 'cause you're going to be held the same rules that all of the other lawyers are held to.

*Respondent*: And to be hon—

*The Court*: And if you want to switch and have her take over, that's fine with the Court, but if you want a shot at representing yourself, then that is what the Court will order. [Counsel] will serve you in a stand-by position, but you're going to need to work with her between now and then and I suggest the two of you meet after this hearing and figure out how you're going to do that. Do you have any questions . . . ?

*Respondent*: Yes, I do. In the event that I do need an attorney if maybe I get confused or something like that, how does it work if she's in stand-by?

*The Court*: You just turn to her and say, "would you take this over?"

*Respondent*: Okay. Fair enough.

-7-

*Respondent*: I mean, she'll be right there.

Both MCL 712A.17c(6)[6] and MCR 3.915(B)(1)(c)[7] permit a respondent to waive the right to assistance of a lawyer. "[C]ourts are to make every reasonable presumption against the waiver of a fundamental constitutional right," and a person cannot waive his or her right to a lawyer unless: (1) the waiver is unequivocal; (2) the waiver is made "knowingly, intelligently, and voluntarily;" and (3) self-representation will not disrupt the court proceedings. *People v Russell*, 471 Mich 182, 188, 190; 684 NW2d 745 (2004);[8] see also *Anderson*, 398 Mich at 367-368.

We conclude that respondent did not make an unequivocal request for self-representation. Respondent did not move to represent himself, and the issue was raised by the court during the hearing on his counsel's motions to withdraw and to adjourn. When asked by the court whether he wanted to represent himself, respondent stated that he preferred to proceed with counsel. When asked again whether he wanted to represent himself or proceed with standby counsel, respondent said that he wanted standby counsel. Respondent asserted his right of self-representation only after being informed that his counsel could act as standby counsel. In *People v Dennany*, 445 Mich 412, 446; 519 NW2d 128 (1994) (opinion by GRIFFIN, J.), the Court held that a request for standby counsel, whether for matters procedural or substantive, can never be considered an unequivocal request for self-representation.

Even assuming that respondent's request was not unequivocal, any error was harmless, particularly in light of the presence of standby counsel. In the case of unpreserved unconstitutional error, respondent must show a plain error that affected his substantial rights, and reversal is required only when the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Carines*, 460 Mich at 774. Respondent was represented by counsel before trial and had the benefit of counsel's expertise leading up to the trial. Respondent thoroughly

---

[6] MCL 712A.17c(6) provides: "Except as otherwise provided in this subsection, in a proceeding under section 2(b) or (c) of this chapter, the respondent may waive his or her right to an attorney. A respondent who is a minor may not waive his or her right to an attorney if the respondent's parent or guardian ad litem objects."

[7] MCR 3.915(B)(1)(c) provides with respect to child-protective proceedings: "The respondent may waive the right to the assistance of an attorney, except that the court shall not accept the waiver by a respondent who is a minor when a parent, guardian, legal custodian, or guardian ad litem objects to the waiver."

[8] Although *Russell* was a criminal case involving waiver of the right to a lawyer, "the right to due process also indirectly guarantees assistance of counsel in child protective proceedings." *In re CR*, 250 Mich App 185, 197; 646 NW2d 506 (2002) (quotation marks and citation omitted), overruled in part on other grounds by *In re Sanders*, 495 Mich 394; 852 NW2d 524 (2014). Because due process guarantees other rights regarding a lawyer, such as the right to effective assistance of a lawyer, principles pertaining to the right to a lawyer "developed in the context of criminal law [also] apply by analogy in child protective proceedings." *Id*. at 198 (quotation marks and citation omitted). Therefore, by analogy, the same would be true of waiver of right to counsel.

-8-

cross-examined petitioner's witnesses and raised objections throughout the hearing. Respondent consulted with standby counsel during the trial, and counsel reviewed the jury instructions with the court. Further, respondent has not asserted that the evidence was insufficient to support the jury's verdict at the adjudication trial. The jury would have reached the same conclusion even if counsel had represented respondent.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL AT THE ADJUDICATION TRIAL

Respondent argues that he was denied the effective assistance of counsel at the adjudication trial.[9] Respondent agreed, however, to represent himself with the assistance of standby counsel. Respondent does not have a right to represent himself and be represented by counsel. See *Dennany*, 445 Mich at 442. Although a trial court may appoint standby counsel to aid a defendant who elects to represent himself, a defendant does not have a constitutional right to the assistance of standby counsel. *Id.* at 443. Moreover, standby counsel does not represent defendant because "standby counsel cannot substantially interfere with any significant tactical decisions, cannot control the questioning of witnesses, and cannot speak in place of the defendant on any matter of importance." *People v Willing*, 267 Mich App 208, 227-228; 704 NW2d 472 (2005) (quotation marks and citation omitted). Therefore, standby counsel "cannot be held to the standards of effective assistance required of trial counsel." *People v Kevorkian*, 248 Mich App 373, 427; 639 NW2d 291 (2001). Standby counsel was not required to meet the standards of effective assistance because he was not acting as trial counsel.

## D. ADJOURNMENT OF THE TERMINATION HEARING

Respondent argues that it was an abuse of discretion for the trial court to deny an adjournment on the second day of the termination hearing because respondent was unable to attend the hearing in person and present a defense until he could obtain laboratory results from a COVID-19 test. He argues that the failure to grant the adjournment implicated his due-process rights. A trial court's decision to grant or deny a motion for an adjournment is reviewed for an abuse of discretion. *Utrera*, 281 Mich App at 8. An abuse of discretion occurs when the trial court chooses an outcome that falls outside the range of principled outcomes. *In re Jones*, 286 Mich App 126, 130; 777 NW2d 728 (2009).

In child-protective proceedings, a trial court's decision to grant or deny a respondent's motion for an adjournment is governed by MCR 3.923(G), which provides that "[a]djournments of trials or hearings in child protective proceedings should be granted only (1) for good cause, (2) after taking into consideration the best interests of the child, and (3) for as short a period of time as necessary."

---

[9] Although respondent asserts that he was denied the effective assistance of counsel "during the time prior to and including the adjudication trial," his argument on appeal addresses only the adjudication trial.

"[I]n order for a trial court to find good cause for an adjournment, a legally sufficient or substantial reason must first be shown." *Utrera*, 281 Mich App at 11 (quotation marks and citation omitted). Respondent seemingly contends that he had good cause because the denial of the adjournment violated his due-process right to be present and to present a defense.[10] Respondent does not cite any authority to support that the failure to grant an adjournment is a constitutional error that implicates due-process rights. Merely announcing a position is not sufficient to present an issue. *People v Matuszak*, 263 Mich App 42, 59; 687 NW2d 342 (2004). A party abandons its assertions when it fails to provide any authority in support of its assertions. *Id.*

In any event, the record shows that despite being aware of exposure to COVID-19 on January 19, 2022, allegedly testing positive for COVID-19 using a home test on January 21,[11] and the court's granting of an adjournment of the first day of the termination hearing from 10:28 a.m. on January 25 until 9:00 a.m. on January 26 so that he could obtain a laboratory test for COVID-19, respondent did not have a test on January 25. Respondent's counsel informed the court at the commencement of the hearing on January 26 that respondent had scheduled the COVID-19 test for 9:00 a.m. that morning. Respondent voluntarily chose not to timely obtain a laboratory COVID-19 test after learning that he tested positive using a home test on January 21. Respondent did not show a legally sufficient or substantial reason to adjourn the hearing—for a second time— on the basis of his absence. *Utrera*, 281 Mich App at 11. Thus, he has failed to satisfy the first requirement of MCR 3.923(G). Further, the court allowed respondent's counsel to make an offer of proof regarding respondent's expected testimony. Respondent has not given any information

---

[10] Parents have a constitutionally protected liberty interest in the right "to make decisions concerning the care, custody, and control of their children." *Sanders*, 495 Mich at 409. Thus, parents are entitled to due process before the government can interfere with their parental rights. *Id.* Due process requires fundamental fairness and a meaningful opportunity to be heard. *In re Rood*, 483 Mich 73, 92; 763 NW2d 587 (2009) (opinion by CORRIGAN, J.).

[11] On December 27, 2021, just a few weeks before the termination hearing, the Centers for Disease Control and Prevention (CDC) issued a media statement entitled, "CDC Updates and Shortens Recommended Isolation and Quarantine Period for General Population." The statement provided, in relevant part, as follows:

> Given what we currently know about COVID-19 and the Omicron variant, CDC is shortening the recommended time for isolation for the public. People with COVID-19 should isolate for 5 days and if they are asymptomatic or their symptoms are resolving (without fever for 24 hours), follow that by 5 days of wearing a mask when around others to minimize the risk of infecting people they encounter. The change is motivated by science demonstrating that the majority of SARS-CoV-2 transmission occurs early in the course of illness, generally in the 1-2 days prior to onset of symptoms and the 2-3 days after. [See <https://www.cdc.gov/media/releases/2021/s1227-isolation-quarantine guidance.html>.]

regarding what additional evidence he might have proffered that would have made a difference in the outcome of the case had the trial court granted the adjournment and has failed to show that the trial court abused its discretion by declining to further adjourn the hearing.

Affirmed.

/s/ David H. Sawyer
/s/ Jane E. Markey