*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DWONNE BALLARD,

Defendant-Appellant.

UNPUBLISHED
January 21, 2025
12:19 PM

No. 366464
Wayne Circuit Court
LC No. 21-002495-01-FC

Before: BOONSTRA, P.J., and K. F. KELLY and YOUNG, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial conviction of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a), (2)(b). The trial court sentenced defendant to the mandatory minimum prison sentence of 25 to 50 years. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises out of defendant's assault of SW in 2018. SW was eleven years old at the time. Defendant was more than seventeen years old and was in a dating relationship with SW's mother. SW testified that she considered defendant to be her stepfather at the time.

At the time of trial, SW was 16 years old; she testified that on June 18, 2018, she was in her bedroom when defendant walked in wearing only a towel and asked her what she was doing. He approached her and when she attempted to leave the room, defendant tried to shut the door. SW was able to leave the room, but defendant followed her into other parts of the house. Defendant went into the kitchen, obtained a knife, and forcibly penetrated SW's vagina with his penis while holding the knife to her neck. Defendant threatened to harm SW and her younger sister if she told her mother what he had done.

Early the next morning, SW told her mother what had occurred, and her mother removed SW and her sister from the house, contacted the police, and took SW to the hospital. SW's mother was the only other testifying witness at trial, and she confirmed that when she returned home the night that SW was assaulted, SW was "acting funny," sitting in her room with the lights off, and seemed scared. SW's mother also felt that defendant was acting suspiciously. She confirmed that

SW disclosed the assault to her early in the morning of the following day, while defendant was asleep.

During a break in the trial, some jurors overheard defendant talking on the phone about his case. As a result, one juror was dismissed and the parties agreed to proceed with only eleven jurors. Defendant was convicted and sentenced as described. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the evidence was insufficient for the jury to convict him of CSC-I. We disagree.

This Court reviews de novo a challenge to the sufficiency of the evidence. *People v Speed*, 331 Mich App 328, 331; 952 NW2d 550 (2020). In determining whether the evidence is sufficient to sustain a conviction, we review the evidence in the light most favorable to the prosecution and consider whether it was sufficient to justify a rational trier of fact in finding guilt beyond a reasonable doubt. *People v Harris*, 495 Mich 120, 126; 845 NW2d 477 (2014).

> But more importantly, "[t]he standard of review is deferential: a reviewing court is *required* to draw all reasonable inferences and make credibility choices in support of the jury verdict. The scope of review is the same whether the evidence is direct or circumstantial. Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000) (quotation marks and citation omitted; emphasis added). "It is for the trier of fact, *not the appellate court*, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002) (emphasis added). [*People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018).]

Defendant was charged with CSC-I under MCL 750.520b(1)(a) and (2)(b), which provides that an offender is guilty of CSC-I if he or she sexually penetrates another person, that person is under the age of thirteen, and the offender is age seventeen or older. It was undisputed that at the time of the offense, SW was 11 years old and defendant was older than seventeen. Further, the evidence offered at trial was sufficient to prove that defendant sexually penetrated SW. SW testified that defendant sexually penetrated her by placing his penis in her vagina. Her testimony established sexual penetration, which includes "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." MCL 750.520a(r). See *People v Lockett*, 295 Mich App 165, 188; 814 NW2d 295 (2012).

Defendant argues that the evidence was insufficient because there was no corroboration of SW's testimony. This argument lacks merit. MCL 750.520h provides that, for prosecutions under MCL 750.520b to MCL 750.520g, the victim's testimony need not be corroborated. Therefore, the jury could find defendant guilty of CSC-I based solely on SW's testimony. See *People v Solloway*, 316 Mich App 174, 181; 891 NW2d 255 (2016).

-2-

Notwithstanding the lack of required corroboration, defendant argues that SW's testimony was incredible, because the evidence at trial established that defendant had had a good relationship with SW for many years before she alleged that he had suddenly assaulted her while armed with a knife. Defendant further points out that he had no prior record of violent or sexual criminal offenses. Defendant relies on *People v Douglas*, 496 Mich 557; 852 NW2d 587 (2014), in arguing that it is proper for this Court to consider the absence of corroborative evidence of a victim's testimony. We disagree with this interpretation of *Douglas*. *Douglas* addressed the admission of a hearsay statement of a victim, who was three years old, under MRE 803A. *Douglas*, 496 Mich at 561-562. While our Supreme Court discussed the corroborative effect of the victim's statement compared to its prejudicial effect, the Court did not address the sufficiency of the evidence. *Id*. at 573-579, 580 n 6. *Douglas* does not require this Court to reverse a jury verdict based on a lack of corroborating evidence. MCL 750.520h plainly provides that corroboration is not required and, therefore, a jury may decide whether a sexual assault occurred solely considering the victim's testimony. While defendant was permitted to argue that SW's testimony was incredible, including by pointing out the lack of corroborating eyewitness testimony or physical evidence, it was for the jury alone to evaluate her credibility. See *People v Bailey*, 310 Mich App 703, 713-715; 873 NW2d 855 (2015). There was sufficient evidence produced at trial for the jury to find defendant guilty beyond a reasonable doubt of CSC-I.

## III. CRUEL AND/OR UNUSUAL PUNISHMENT

Defendant also argues that his 25-year mandatory minimum sentence amounts to cruel and/or unusual punishment. We disagree. Defendant did not challenge his sentence on this ground in the trial court. The issue is therefore not preserved. *People v Burkett*, 337 Mich App 631, 635; 976 NW2d 864 (2021). As an unpreserved constitutional issue, this Court reviews defendant's argument for plain error that affected his substantial rights. *Id*.

The United States Constitution bars "cruel and unusual punishment," US Const, Am VIII, while the Michigan constitution prohibits "cruel or unusual punishment," Const 1963, art 1, § 16. Consequently, Michigan's constitution provides broader protection than the federal constitution. *People v Stovall*, 510 Mich 301, 313-314; 987 NW2d 85 (2022). When analyzing whether a punishment is cruel or unusual, this Court considers the following factors: (1) the harshness of the penalty compared to the gravity of the offense, (2) the penalty imposed for the offense compared to penalties imposed for other offenses in Michigan, (3) the penalty imposed for the offense in Michigan compared to the penalty imposed for the same offense in other states, and (4) whether the penalty imposed advances the goal of rehabilitation. *People v Bullock*, 440 Mich 15, 30, 33-34; 485 NW2d 866 (1992).

In this case, defendant was given the statutorily-mandated minimum prison sentence of 25 years because he was convicted of CSC-I involving a victim under the age of 13 years and a defendant 17 years or older. MCL 750.520b(2)(b). Defendant contends that his sentence is disproportionate and severe, amounting to cruel or unusual punishment. He cites the length of his sentence, the fact that his sentencing guidelines range was calculated at considerably below the minimum sentence, the mandatory nature of the minimum term, the failure to consider any individualized criteria, and the absence of any parole consideration. Defendant, however, acknowledges that this Court has resolved this issue contrary to his position.

This Court has held that the Legislature's adoption of a mandatory minimum term of 25 years for those who are over the age of 17 years and are convicted of CSC-I involving a victim under the age of 13 years, MCL 750.520b(2)(b), does not involve cruel or unusual punishment. *People v Benton*, 294 Mich App 191, 203-207; 817 NW2d 599 (2011). Defendant acknowledges that this Court is bound to follow this Court's opinion in *Benton* on this issue, MCR 7.215(C)(2). Defendant cannot prove that MCL 760.520b(2)(b) is cruel or unusual under a facial challenge by attacking the statute itself when this Court has rejected that argument. *People v Johnson*, 336 Mich App 688, 695; 971 NW2d 692 (2021), lv gtd 509 Mich 1094 (2022), lv app vacated 511 Mich 1047 (2023). Moreover, defendant has not raised an as-applied challenge premised on the particular facts surrounding his conviction and sentence. See *People v Jarrell*, 344 Mich App 464, 482; 1 NW3d 359 (2022) (citation omitted), lv app held in abeyance ___ Mich ___; 994 NW2d 778 (2023), lv app held in abeyance ___ Mich ___; 12 NW3d 396 (2024). We therefore follow *Benton* and hold that defendant's mandatory minimum sentence was not cruel or unusual punishment.

## IV. VOIR DIRE

In his Standard 4 brief,[1] defendant argues that he was either not present when the trial court conducted voir dire to select his jury, or that he was not allowed to offer his input in the selection of his jury. Because defendant did not raise this issue before the trial court, this Court's review is limited to whether plain error occurred that affected his substantial rights. *Burkett*, 337 Mich App at 635.

Defendant's argument is not supported by the law or by the trial court record. Defendant appears to argue that he had a right to personally participate in voir dire, under MCL 600.1307(a). However, MCL 600.1307 was repealed by 1978 PA 11, effective February 8, 1981. Defendant nonetheless argues that he was prohibited from participating in the actual questioning of jurors during voir dire. Instead, only his counsel was allowed to ask jurors questions.

The record shows that defense counsel conducted voir dire on defendant's behalf. To the extent that defendant is claiming that he had the right to question potential jurors, that argument lacks merit. Defendant was represented by counsel and his attorney had the authority to conduct voir dire as part of his trial strategy. *People v Johnson*, 245 Mich App 243, 259; 631 NW2d 1 (2001). Defendant may not assert both his right to counsel and also his right to represent himself. *People v Dennany*, 445 Mich 412, 442; 519 NW2d 128 (1994). Further, nothing in the record suggests that defendant was prevented from conferring with his attorney about jury selection.

Defendant had the right to be present when jury selection was conducted. See *People v Buie (On Remand)*, 298 Mich App 50, 56; 825 NW2d 361 (2012). To the extent defendant argues that voir dire was conducted in his absence, there is nothing on the record to suggest that defendant was not physically present during voir dire; indeed, comments made by the court during voir dire seem to suggest that defendant was present in the courtroom at the time.

---

[1] A supplemental appellate brief filed by a criminal defendant *in propria persona* under Supreme Court Administrative Order No. 2004-6, Standard 4.

Accordingly, because there is no support in the record for this Court to conclude that defendant was denied the right to participate in voir dire by consulting his attorney, or was absent during voir dire, defendant has not shown that plain error occurred that affected his substantial rights. *Burkett*, 337 Mich App at 635.

## V. ELEVEN-MEMBER JURY

Defendant also argues in his Standard-4 brief that his constitutional right to a jury of twelve jurors was violated. We disagree. Whether defendant properly waived his fundamental right to a jury of twelve jurors is a constitutional issue we review de novo. *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011); Const 1963, art 1, § 20.

MCR 6.410(A) provides as follows:

> Except as provided in this rule, a jury that decides a case must consist of 12 jurors. At any time before a verdict is returned, the parties may stipulate with the court's consent to have the case decided by a jury consisting of a specified number of jurors less than 12. On being informed of the parties' willingness to stipulate, the court must personally advise the defendant of the right to have the case decided by a jury consisting of 12 jurors. By addressing the defendant personally, the court must ascertain that the defendant understands the right and that the defendant voluntarily chooses to give up that right as provided in the stipulation. If the court finds that the requirements for a valid waiver have been satisfied, the court may accept the stipulation. Even if the requirements for a valid waiver have been satisfied, the court may, in the interest of justice, refuse to accept a stipulation, but it must state its reasons for doing so on the record. The stipulation and procedure described in this subrule must take place in open court and a verbatim record must be made.

Accordingly, MCR 6.410(A) requires that the trial court (1) personally address the defendant in open court and on the record, (2) advise the defendant of the right to a jury of twelve jurors, (3) ascertain that the defendant understands that right, (4) find that the defendant voluntarily chooses to give up the right to a jury of twelve jurors, and (5) accept the waiver if the requirements have been satisfied and it is in the interest of justice. Following the requirements for waiving this right under MCR 6.410(A) creates a presumption that the waiver was knowing, voluntary, and intelligent. See *People v Cook*, 285 Mich App 420, 422-423; 776 NW2d 164 (2009); *People v Mosly*, 259 Mich App 90, 96; 672 NW2d 897 (2003).

In this case, after the jury was given its final instructions, the court allowed the jury to leave for a lunch break. Upon returning from the break, the court was informed that three jurors had overheard defendant talking about the case over the telephone in a hallway. After the court heard from the jurors and a court officer, the parties agreed that Juror Ten would be removed. Outside of the jury's presence, the trial court made a record of defendant's agreement to dismiss a juror and continue the trial with only eleven jurors, even though there were two alternates available. The record shows that defense counsel conferred with defendant about the possible alternatives to having fewer than twelve jurors, which included calling back an alternate. The trial court explained to defendant that he had a right to have his jury composed of twelve jurors. Defendant

told the trial court, under oath, that he understood that he had a constitutional right to twelve jurors and that he was waiving that right in order to have his case decided by only eleven jurors. The record shows that the trial court properly applied MCR 6.410(A). Defendant has not demonstrated that his waiver was invalid. *Armstrong*, 490 Mich at 289.

Defendant argues that this Court's decision in *People v Miller*, 121 Mich App 691, 695, 703-704; 329 NW2d 460 (1982) supports his argument that reversal is required. We disagree. Apart from the nonbinding nature of *Miller*, see MCR 7.215(J)(1), *Miller* involved the issue of whether the defendant had validly waived his right to a unanimous verdict in a criminal case. This Court concluded that there was not a proper waiver of that fundamental, constitutional right when the options, included declaring a mistrial, were not explained to the defendant. *Id*. at 703-704. By contrast, in this case, the trial court followed the court rule, explained defendant's options, and confirmed that he had knowingly and understandably waived his right to twelve-member jury. Defendant has not demonstrated error requiring reversal.

Affirmed.

/s/ Mark T. Boonstra
/s/ Kirsten Frank Kelly
/s/ Adrienne N. Young